FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP. 11 2019 ★

LONG ISLAND OFFICE

# CV-19 5165

Index No:

SEYBERT, J.

TOMLINSON, M.J.

# United States District Court

*for the*

# EASTERN DISTRICT OF NEW YORK

**JS,** a minor 17 years of age, by her mother and natural guardian, **LINDA SNYDER**, individually and on behalf of all those other 16 and 17-year-old minors arrested by the Nassau County Police Department and coerced into entering and appearing in the Nassau County Adolescent Diversion Program (ADP) without the statutory protections afforded to other criminal defendants in the County of Nassau, and **LINDA SNYDER**, individually and on behalf of all others whose cellular phone/electronic devices are seized by law enforcement officers without a warrant or under exigent circumstances in Nassau County;

**LINDA SNYDER**, individually and on behalf of all those other persons in Nassau County and whose cell phones and smart phones had seized but have not yet been returned although no circumstances exist which might justify law enforcement officials in retaining those devices; and

**J.S.,** A MINOR, **LINDA SNYDER,** individually and on behalf of all the parents of those 16 and 17-year-old minors arrested by the Nassau County Police Department and coerced into entering the Nassau County Adolescent Diversion Program (ADP) who underwent psychological examination and questioning by the **NASSAU COUNTY PROBATION DEPARTMENT** without informed consent, the presence of an attorney or HIPPA release and from whom information was disseminated to the Nassau County District Attorney's Office; and

*Plaintiffs*

–v–

**COUNTY OF NASSAU;**
**MADELINE SINGAS** as **NASSAU COUNTY DISTRICT ATTORNEY;**
**PATRICK J. RYDER** as **Commissioner of Police, Nassau**

County Police Department and the NASSAU COUNTY
POLICE DEPARTMENT;  Nassau County Police Detective
Damien Saurez # 8794, Nassau County Police Detective
Brendan C Gibbs (# 8774) individually and in their official
capacity; Nassau County Police Officers John and Jane Doe #
1–10, individually and in their official capacity; and
Hempstead Police Officers John And Jane Doe # 1–10,
individually and in their official capacity as officers of the
Village of Hempstead Police Department, Hempstead Police
Officer Roth No. 1252, individually and in his official capacity;
and the VILLAGE OF HEMPSTEAD POLICE DEPARTMENT;
JOHN PLACKIS, as DIRECTOR OF PROBATION, and NASSAU
COUNTY DEPARTMENT OF PROBATION,
N. SCOTT BANKS as ATTORNEY IN CHIEF, LEGAL AID SOCIETY
OF NASSAU COUNTY; HON. JANET DiFIORE as CHIEF JUDICIAL
OFFICER OF THE STATE OF NEW YORK and Chief Judge of the
Court of Appeals; HON. NORMAN ST. GEORGE, District
Administrative Judge, County of Nassau in their
representative capacities as the administrative and procedural
managers and supervisors of THE UNIFIED COURT SYSTEM OF
THE 10TH JUDICIAL DISTRICT; MARY McCORMICK, as C.E.O. of
CENTER FOR COURT INNOVATION FUND FOR THE CITY OF NEW
YORK and the CENTER FOR COURT INNOVATION, and
BRANDON CHAMBERS,

*Defendants*

# VERIFIED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Jury Trial Demand ................................................................ 1

Jurisdiction ......................................................................... 1

Venue ................................................................................ 2

Administrative Remedies ...................................................... 3

The Representative Plaintiffs ................................................ 3

    Representative Plaintiff J.S. .............................................. 3

    Representative Plaintiff Linda Snyder ............................... 6

The Plaintiff Class subject to ADP is "vulnerable" ................. 9

Class action allegations ...................................................... 11

    Numerosity under Rule 23(a)(1) ..................................... 12

    Common questions of law under Rules  23(a)(2) and 23(b)(3) .......... 13

    Typicality under Rule  23(a)(3) ........................................ 13

    Adequacy under Rule 23(a)(4) ........................................ 14

    Superiority under 23(b)(3) .............................................. 14

    Alternative certification under Rule 23(b) or 23(c) ............. 14

This is an action in equity .................................................. 15

Defendant County of Nassau .............................................. 16

Defendant Madeline Singas as Nassau County District Attorney, named in her official capacity ................................ 23

Defendant Nassau County Police Department ....................... 27

Defendant Village of Hempstead, Village of Hempstead Police Department ............................................................ 29

Defendant Nassau County Probation Department ................. 32

Defendant The Unified Court System of the 10th Judicial District ....... 37

Defendant The Legal Aid Society of Nassau County .............. 39

Defendant civilian contractors ........................................... 40

Mary McCormick, as C.E.O. of Center for Court Innovation Fund for the City of New York, and the Center for Court Innovation ................ 40

    Civilian contractor's duty of care ........................................ 44

Defendant Brandon Chambers ............................................... 44

The Adolescent Diversion Program ........................................ 45

The Risk-Need-Responsivity Model ....................................... 56

The Risk Factor Prevention Paradigm (RFPP) ........................ 62

The Youth Assessment Screening Instrument (YASI) ............... 66

YASI Evaluation critique .................................................... 71

Nassau District court practice ............................................. 75

The Plaintiffs' Claims under the Plaintiff ADP Class .............. 78

    Actionable events ...................................................... 78

HIPPA violations ............................................................. 78

The Constitutional issues ................................................... 80

Fifth Amendment: *Miranda* considerations ........................... 80

The Sixth Amendment: "right to counsel" .............................. 81

The Fifth Amendment: "equal protection" .............................. 82

The Fifth Amendment: "due process" .................................... 82

The Fourth Amendment: Seizure .......................................... 85

The Fourth Amendment: Right to Counsel ............................. 86

The Fourth Amendment: Informed Consent ........................... 86

The Fifth Amendment: Informed Consent .............................. 86

Declaratory claims ........................................................... 87

Plaintiff Class of persons subject to conversion, theft and/or takings of Electronic Devices without Due Process or Renumeration .............. 89

    Actionable events ...................................................... 89

Declaratory claims ........................................................... 89

iv

individual claims brought on behalf of Plaintiffs and not class claims . 91

First Count: 42 U.S.C. § 1983; False arrest/false imprisonment ........... 91

Second Count: 42 U.S.C. § 1983 and New York Law; Abuse of process 93

Third Count: 42 U.S.C. §§ 1985 and 1986; Conspiracy to commit civil rights violations and failure to intervene ......................................... 96

Fourth Count: State and Federal Law;  Malicious Prosecution ........... 101

PENDENT JURISDICTION ................................................................. 106

Fifth Count: Negligence .................................................................... 106

Sixth Count: Assault & Battery ......................................................... 109

Seventh Count: Intentional infliction of emotional distress ............... 111

Eighth Count: Negligent infliction of emotional distress pendent jurisdiction ........................................................................................ 114

Damages ........................................................................................... 116

Prayer for Relief ............................................................................... 120

    Declarations of fact and law ........................................................... 120

    The equitable remedy of mandamus ............................................... 122

    The equitable remedy of prohibition .............................................. 123

## VERIFIED CLASS ACTION COMPLAINT

The Representative Plaintiffs, **J.S.,** a minor 17 years of age, by her mother and natural guardian, **LINDA SNYDER**, individually and on behalf of (1) all those other 16 and 17 year old minors arrested by the various police agencies within County of Nassau, including but not limited to the Nassau County Police Department and Hempstead Village Police Department, and coerced into entering the Nassau County Adolescent Diversion Program ("ADP") who submitted to psychological examination by Nassau County Probation Department, questioning outside the presence of an attorney and from whom information was gathered and produced to the Nassau County District Attorney's Office without informed consent and without a *Health Insurance Portability and Accountability Act of 1996* release  (hereinafter referred to as the "Plaintiff ADP Class"), (2) all persons whose cellular phone/electronic devices are taken by the aforementioned Defendants without a warrant, due process or any mechanism for the return of such cellular phone/electronic devices, by their attorneys the Law Office of Cory H. Morris PC and the and Victor John Yannacone jr, *of counsel*, alleges the following as and for their verified complaint in this action.

### JURY TRIAL DEMAND

The Representative Plaintiffs and members of the Class hereby demand a trial by jury on all issues so triable.

### JURISDICTION

1.      Court has subject matter jurisdiction over all claims in this action pursuant to the *Class Action Fairness Act,*

1

28 U.S.C. § 1332(d)(2), because Plaintiffs bring class claims on behalf of citizens of states different than Defendants' states of citizenship, the complaint seeks injunctive relief and/or an amount in controversy exceeds $5 million, and the proposed class is in excess of 100 members.

2.   This Court also has subject matter jurisdiction over the federal claim in this action pursuant to 28 U.S.C. § 1331.

3.   Plaintiffs claim class violations of the *Health Insurance Portability and Accountability Act of 1996* (HIPAA), New York Public Health Law, violations of their New York State Constitution and Federal Constitutional Rights protected under the Fourth, Fifth and Sixth and Fourteenth Amendments.

4.   Plaintiffs claim individual violations, personal to Plaintiffs, relating to the false arrest, malicious prosecution, abuse of process and property seizures suffered by J.S. brought by Linda Snyder, her natural guardian and mother.

VENUE

5.   The United States District Court for the Eastern District of New York at Central Islip is the appropriate venue for this action.

6.   Venue is proper in this District under 28 U.S.C. § 1391 because the policies complained of herein and alleged more fully and at large in this complaint all occurred within or about facilities maintained by the County of Nassau in the County of Nassau, New York within the jurisdiction of this Court.

## ADMINISTRATIVE REMEDIES

7. On or about April 22, 2019 a litigation hold notice and Notice of Claim was served upon Nassau County, Nassau County Probation Department, Nassau County Attorney's Office, Hempstead Police Department, Hempstead Village, Nassau County Probation Department and the District Attorney of the County of Nassau.

8. Plaintiffs were noticed and examined pursuant to the General Municipal Law, Section 50, on or about July 11, 2019.

9. Approximately sixty days have passed and Defendants have failed to adjust any of the claims contained herein.

10. This action has been timely commenced within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1986.

## THE REPRESENTATIVE PLAINTIFFS

# Representative Plaintiff J.S.

11. Representative Plaintiff J.S. is currently seventeen years old. She attends/attended a suburban high school on Long Island within the Eastern District of New York.

12. Plaintiff J.S. was falsely accused by various law enforcement agencies of engaging in criminal conduct through conspirator Brandon Chambers.

13. Brandon Chambers was an adult who engaged in a felonious relationship with J.S.

14. Brandon Chambers was twenty-one years old or older when he engaged in sexual acts with then sixteen year old J.S.

3

15.    Plaintiff J.S. suffered the following violations of her civil, human and natural rights:

    a. Plaintiff J.S. was seized in her home without a warrant;

    b. Plaintiff J.S. was questioned outside the presence of her mother and without being given notice of her *Miranda* rights;

    c. Plaintiff J.S. had her property and/or her mother's property seized and her most personal photographs, communications, images and papers searched in violation of the Fourth Amendment and the clear direction of the Supreme Court of the United States in *Riley* v. *California*, 573 U.S. ___, 134 S. Ct. 2473; 189 L.Ed. 2d 430

    d. Plaintiff J.S. was forcibly removed from her bedroom at 2:00 AM and arrested without arguable probable cause/ probable cause – her mother was not informed of the arrest;

    e. Plaintiff J.S. was arraigned and summarily transferred to the Adolescent Diversion Part ("ADP") of Nassau County without being informed of what the Adolescent Diversion Part of Nassau County was;

    f. Plaintiff J.S. was arraigned and summarily transferred to the Adolescent Diversion Part of Nassau County without being informed of her right to speak to counsel prior to submitting to invasive psychological testing or speaking to and being interrogated by law enforcement agents;

    g. Plaintiff J.S. was Ordered by a judge to report to the Nassau County Probation Department that performed a

4

psychological examination without a HIPPA release, informed consent or authority, implicit or explicit, to provide such information to the Nassau County District Attorney's Office for prosecution and investigation of other matters/crimes.

16. The Fourth and Fourteenth Amendment rights of Plaintiff J.S., and all other similarly situated persons, were violated when she was forced to appear in the Adolescent Diversion Part, Nassau County Probation Department prior to conviction, a plea of guilty, or informed consent to the transfer.

17. The Fifth and Fourteenth Amendment rights of Plaintiff J.S. and all other similarly situated persons, were violated when she was forced to divulge information beyond pedigree information to the Nassau County Probation Department, see *In re Gault*, 387 U.S. 1 (1967), that was later disseminated to the Nassau County District Attorney's Office.

18. The Fifth and Sixth Amendment rights of Plaintiff J.S. and all other similarly situated persons, were violated when Nassau County Probation Department conducted questioning outside the presence of counsel.

19. The rights of Plaintiff J.S., and all other similarly situated persons, under HIPPA were violated when Nassau County Probation Department performed mental health/ psychological examinations upon those referred without consent and disseminated that information to, among others, the Nassau County District Attorney and other employees of Nassau County and the State of New York.

20.     The rights of Plaintiff J.S., and all other similarly situated persons, were violated when they were not afforded sufficient information to provide informed consent to such search, seizure, to waive the right to counsel, to participate in psychological examination that, upon information and belief, was utilized as statistical data by Defendant County of Nassau and its sub-agencies.

21.     The due process rights of Plaintiff J.S. and all other similarly situated persons, were violated when such persons were summarily transferred to the Adolescent Diversion Part, Nassau County Probation Department, Nassau County District Attorney's Office.

22.     Plaintiff J.S. and all other similarly situated persons, who were summarily transferred to the Nassau County Adolescent Diversion Program (ADP) were denied rights and protections afforded to other accused persons in Nassau County in violation of longstanding Supreme Court Jurisprudence.

## Representative Plaintiff Linda Snyder

23.     Plaintiff Linda Snyder is the parent and natural guardian of J.S., a minor child.

24.     Plaintiff Linda Snyder was approached at her home in the middle of the night on January 29, 2019 by the Nassau County Police Department ("NCPD") who forcibly entered her home without a warrant.

25.     Plaintiff Linda Snyder was subjected to unwarranted police invasion that led to a NCPD officer entering the bedroom of her minor child, J.S., seizing J.S. and seizing the cellular phone afforded by Linda Snyder to her child, J.S.

26.     Upon information and belief, both NCPD and Hempstead Police Department knew and had reason to know that Brandon Chambers, five years older than J.S. when she was 16 years old, engaged in a sexual relationship with J.S. prior to the NCPD approaching Linda Snyder at her home in the early hours of the morning.

27.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was deprived of due process when her minor child was arraigned and she was instructed, without advice of counsel or information about her right to counsel, to sign a form entering her child into ADP and subjecting the children to, *inter alia*, psychological testing.

28.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when instructed to sign a form by a judge and enroll her minor child into the Nassau County Adolescent Diversion Program (ADP) without sufficient information to provide informed consent. See Exhibit "1", "4" and "5" Parent Affidavits, annexed hereto and fully incorporated herein.

29.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when instructed to take her minor child from a Courtroom directly to the Nassau County Probation Department. *Id.*

30.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when not afforded a bail hearing to provide her child with the opportunity to be released from custody on

7

reasonable bail, in the custody of her parent(s), or on her own recognizance. *Id.*

31. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, were denied due process when her minor child was arraigned without a preliminary determination that the accusatory instrument was legally sufficient. *Id.*

32. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when her minor child was subjected to psychological testing without being informed of their rights under HIPPA. *Id.*

33. **MADELINE SINGAS** as **NASSAU COUNTY DISTRICT ATTORNEY; PATRICK J. RYDER** as Commissioner of Police, Nassau County Police Department and the **JOHN PLACKIS**, as **DIRECTOR OF PROBATION, NASSAU COUNTY DEPARTMENT OF PROBATION, HON. JANET DiFIORE** as **CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK** and the Chief Judge of the Court of Appeals and **HON. NORMAN ST. GEORGE,** District Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of the **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** were responsible, in whole or in part, for Ordering Youth and their parents to submit to such conditions of release – psychological examination, forced inquiry, violations of federal rights to the constitution including that against self-incrimination and the right to counsel, and the unlawful seizure and invasive testing without HIPPA compliance or informed consent.

34.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was a victim of HIPPA violations when the mental health/psychological examination information about her minor child was provided to, *inter alia*, the Nassau County District Attorney's Office;

35.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied their Fifth Amendment right to remain silent, individually and on behalf of her child and the class of children subjected to questioning.

36.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied her Sixth Amendment rights to seek counsel, and be represented by counsel during all processes and proceedings including the questioning of her minor child.

37.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when her minor child were subjected to ADP, a part that does not allow for the ordinary statutory and constitutional protections afforded to accused persons in Nassau County.

### THE PLAINTIFF CLASS SUBJECT TO ADP IS "VULNERABLE"

38.     Youth are a historically vulnerable class of persons not afforded the full protection of constitutional protection under the doctrine of *parens patriae*.

39.     "[T]he child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children" (*Kent v. United States*, 383 U.S. 541, 556 (1966)) and

9

required procedural safeguards in judicial waiver proceedings including a hearing, assistance of counsel, access to social investigations, and written findings and conclusions that an appellate court could review.

40. In the name of safety, regulation and/or convenience, Risk Assessment tools are employed to address some of the concerns of law enforcement with respect to minors under the doctrine of *parens patriae.*

41. The Federal Government [is] the ultimate *parens patriae* of every American citizen.

42. Risk assessment tools do not prescribe legal decisions.

43. Risk assessment tools were not designed to specify the action a court should take but to provide Courts with additional information, grounded in research, to enhance the decision-making process of the court.

44. According to Utting in *A Guide to Promising Approaches.* London: Communities that Care (1999), utilizing risk factors to predict (and influence) an individual's future behaviour is not only ethically questionable, but also fraught with interpretive difficulty regarding the measurement of risk factors and their portrayal as 'predictive' of offending."

45. Nassau County, the Nassau County Courts through its judiciary, Nassau County Probation Department and the Nassau County Police Department cooperated in the use ADP and the Youth Assessment Screening Instrument ("YASI") scale, see *infra,* for youth outside of the presence of an attorney, without informed consent or HIPPA release.

46. Information gathered by the administration of a YASI scale, see *infra,* to accused youth assigned to the ADP part was later disseminated to the Nassau County District Attorney's Office for the investigation and prosecution of other crimes.

47. The psychological research is rife that such determinations over the course of punishment or rehabilitation for youth in the criminal justice should not be determined by a psychological examination nonetheless a self-reporting device.

48. Generally accepted principles of psychological practice state that determinations over the course of punishment or rehabilitation for youth in the criminal justice should not be determined by a psychological examination nonetheless a self-reporting device.

### CLASS ACTION ALLEGATIONS

49. This action has been brought and may properly be maintained as a class action under Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the *Federal Rule of Civil Procedure.*

50. The Plaintiff Class is composed of two distinct classes: (1) the "ADP Class" and (2) constitutional violations relating to seizure of electronic devices without due process/its return;

**The Plaintiff Class**

51. For the "ADP" Class, Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this action is brought by the representative Plaintiffs individually and on behalf of all those other 16 and 17 year old minors arrested by the Nassau County Police Department and coerced into

11

entering the Nassau County Adolescent Diversion Program (ADP).

52. For the seizure of electronic devices, Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this action is brought by the representative Plaintiffs individually and on behalf of all those other persons who have had their property taken without due process, a warrant, no compensation awarded, such devices searched if not scraped for information, no return of the property and no due process in challenging the seizure or returning the electronic device from Nassau County, Nassau County Police Department, Hempstead Police Department and Madeline Singas in her official capacity only as the head of the Nassau County District Attorney's Office.

## CERTIFICATION UNDER RULE 23(A)

## Numerosity under Rule 23(a)(1)

53. The members of the class are so numerous that joinder of all members is impracticable.

54. While the exact number of class members is unknown to the Representative Plaintiffs at the present time, Plaintiffs believe that there are hundreds, if not thousands, of 16 or 17 year old children who are uniquely at risk similarly as the Representative Plaintiff.

55. Likewise, Plaintiffs believe that there are hundreds, if not thousands, of seizures of electronic devices without a warrant, due process or the return of such cellular phone.

56. Nassau County, and its various sub-agencies, do not allow for the return of an electronic device or provide any

12

mechanism for obtaining a seized electronic device after the dismissal of a pending criminal case.

57. Further, Plaintiffs believe that there are hundreds, if not thousands, of 16 or 17 year old children who were already subject to such violations as the Representative Plaintiff.

58. It would be impracticable to join (either of) the class members individually and there is no need for this Court to do so in order to grant the relief sought by this action.

## Common questions of law under Rules 23(a)(2) and 23(b)(3)

59. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

60. Among the many questions of law and fact common to the class are whether the Representative Plaintiffs and members of the Class are entitled to declaratory and/or injunctive relief and compensatory, general, and/or punitive damages.

## Typicality under Rule 23(a)(3)

61. The claims of the Representative Plaintiffs are typical of the claims of the members of the class of all those other 16 and 17 year old minors arrested by the Nassau County Police Department and coerced into entering the Nassau County Adolescent Diversion Program (ADP).

62. Likewise, the claims of the members of the class regarding the seizure of electronic devices are common: there is a seizure of an electronic device and no means for its return.

63. The claims of the members of the class regarding the seizure of electronic devices are common, also, insofar as

13

the electronic devices seized by Nassau County without a warrant are the subject of, upon information and belief, a search for personal information.

## Adequacy under Rule 23(a)(4)

64. The members of the class will be fairly and adequately represented by the representative Plaintiffs.

65. The Representative Plaintiffs have retained counsel competent and experienced in litigation and they intend to pursue this action vigorously.

66. The Representative Plaintiffs have no interest adverse to or in conflict with that of any individual who might be entitled to the relief sought herein.

67. The counsel who have been selected by the Representative Plaintiffs have no interest adverse to or in conflict with that of any individual who might be entitled to the relief sought herein.

## Superiority under 23(b)(3)

68. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

69. The Representative Plaintiffs and their attorneys are not aware of any difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## Alternative certification under Rule 23(b) or 23(c)

70. Alternative certification may be appropriate under Rules 23(b)(1), 23(b)(2) or 23(c)(4) of the *Federal Rules of Civil Procedure*.

71.     The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

72.     The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

73.     Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief with respect to the members of the class as a whole.

74.     The claims of class members are comprised of common issues that are appropriate for certification under Rule 23(c)(4).

### THIS IS AN ACTION IN EQUITY

75.     Since the earliest days of the Republic, the Supreme Court has ruled that Article III courts such as this honorable Court may fashion remedies consistent with its understanding of substantive due process, liberty, dignity and equity.

76.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, prays this honorable Court to fashion an equitable remedy requiring the criminal Courts of Nassau County to properly arraign minor plaintiffs and not refer a minor Defendant to the Nassau County Adolescent Diversion Program (ADP) until

after a plea of guilty, without the ability to consult and have an attorney present through these critical stages of a criminal proceeding or otherwise upon the informed consent of the minor Defendant and their parent or guardian.

77. Further, Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, prays this Honorable Court to fashion an equitable remedy requiring Nassau County, Nassau County Police Department, Nassau County District Attorney's Office, and Hempstead Police Department to cease from the unlawful seizure of electronic devices and arrange for the return of such devices at the termination of a pending criminal matter.

### DEFENDANT COUNTY OF NASSAU

78. At all times relevant in this Complaint, and upon information and belief, Defendant NASSAU COUNTY, is a municipality within New York State in receipt of federal assistance and was a recipient of federal funding at the time of the events complained of herein. Upon information and belief, Defendant NASSAU COUNTY was responsible for the municipal entity NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY PROBATION DEPARTMENT and the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE and its agents, assigns and employees.

79. At all times relevant in this Complaint, and upon information and belief, Defendant NASSAU COUNTY POLICE DEPARTMENT, is a municipal entity within New York State, NASSAU COUNTY in receipt of federal

16

assistance and was, upon information and belief, a recipient of federal funding at the time of the events complained of herein.

80. At all times relevant in this Complaint, and upon information and belief, Defendant NASSAU COUNTY PROBATION DEPARTMENT, is a municipal entity within New York State, NASSAU COUNTY in receipt of federal assistance and was, upon information and belief, a recipient of federal funding at the time of the events complained of herein.

81. At all times relevant in this Complaint, and upon information and belief, Defendant NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE, is a municipal entity within New York State, NASSAU COUNTY in receipt of federal assistance and was, upon information and belief, a recipient of federal funding at the time of the events complained of herein.

82. Upon information and belief, Defendant NASSAU COUNTY POLICE DEPARTMENT, by and through Defendant **Patrick J. Ryder**, sued in his official capacity **as Commissioner of Police**, was responsible for the its agents, assigns and employees including but not limited to Defendant NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS (# 8774) in his individual and official capacity,  and Defendant NASSAU COUNTY POLICE OFFICERS JOHN AND JANE DOES # 1-10. Collectively, these Defendants are referred to as "NASSAU COUNTY DEFENDANTS."

17

83.   At all times relevant in this Complaint, and upon information and belief, Defendant NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794 was employed by NASSAU COUNTY, NASSAU COUNTY POLICE DEPARTMENT throughout the events complained of herein. Defendant NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794 (referred to hereinafter as "SAUREZ") is being sued in his individual and official capacities.

84.   At all times relevant in this Complaint, and upon information and belief, Defendant NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774 was employed by NASSAU COUNTY, NASSAU COUNTY POLICE DEPARTMENT throughout the events complained of herein. Defendant NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS (referred to hereinafter as "GIBBS") is being sued in his individual and official capacities.

85.   At all times relevant in this Complaint, and upon information and belief, NASSAU COUNTY POLICE OFFICERS JOHN AND JANE DOES # 1-10 were employed by NASSAU COUNTY, NASSAU COUNTY POLICE DEPARTMENT throughout the events complained of herein. NASSAU COUNTY POLICE OFFICERS JOHN AND JANE DOES # 1-10 are being sued in their individual and official capacities. Further, the aforementioned Defendants were acting under color of state law.

86.   Plaintiffs alleges that the NASSAU COUNTY Defendants (collectively and individually) used unreasonable detention, threats and force against Plaintiffs and NASSAU COUNTY

18

Defendants (collectively and individually) were grossly negligent in physically confining, falsely accusing, arresting and/or assisting in Plaintiff J.S.' arrest as well as subsequently prosecuting Plaintiff J.S.

87. Plaintiffs allege that NASSAU COUNTY Defendants, evidenced by a police report, knew that Defendant Brandon Chambers alleged that there was "Prior Intimate Dating" between himself and a minor, J.S., which the NASSAU COUNTY Defendants knew and ignored. See Exhibit "2".

88. To be clear, NASSAU COUNTY Defendants knew and had reason to know that Defendant Brandon Chambers was engaging in statutory rape with a minor and was simultaneously making a complaint of harassment against that minor.

89. NASSAU COUNTY Defendants knew and had reason to know that Brandon Chambers was under the supervision of the state at that time.

90. NASSAU COUNTY Defendants knew and had reason to know that Defendant Brandon Chambers was associated with a gang, see Exhibit "3", and that he engaged in making threats through electronic mediums.

91. NASSAU COUNTY Defendants knew and had reason to know that Brandon Chambers was the perpetrator of, among other things, statutory rape against J.S. but did disregard such criminal act in arresting J.S.

92. NASSAU COUNTY Defendants knew and had reason to know of no exigency, waiting hours after the purported complaint filed by Brandon Chambers before going to Plaintiffs' home without a warrant and forcing their way inside.

93. NASSAU COUNTY Defendants were responsible for the handling of a complaint by an adult of twenty years or

19

older, Brandon Chambers, that described an intimate relationship, see Exhibit "2", between himself and infant Plaintiff J.S.

94.  NASSAU COUNTY Defendants through Saurez and Gibbs recorded the following events:

| | | |
|---|---|---|
| Pattern | | |
| Time-Of-Day | U | |
| Weather Condition | U | |
| Forms Prepared | DCJS, 32B | |
| **MO-Code Description** | | **Comments** |
| 0102 | MALE - VICTIM / COMPLAINANT | |
| 0208 | OTHER RELATION TO OFFENDER | PRIOR INTIMATE DATING |
| 0301 | FEMALE - OFFENDER/INVOLVED | |
| 0408 | OTHER RELATIONSHIP TO VICTIM | PRIOR INTIMATE DATING |
| 0505 | FORMER INTIMATE DATING | |
| 0602 | NO - OFFENDER NOT PRESENT | |
| 0703 | MISDEMEANOR - OFFENSE INVOLVED | AGGRAVATED HARASSMENT |
| 0805 | OTHER INCIDENT INVOLVED | AGGRAVATED HARASSMENT |
| 0901 | NONE - NO FACTORS PRESENT | |
| 1002 | NO - ORDER OF PROTECTION | |
| 1004 | NO - ORDER PROT NOT VIOLATED | |
| 1101 | NONE - NO INJURIES | |
| 1202 | NO - AMBULANCE | |
| 1302 | NO - NO ARREST MADE | |
| 1305 | YES - CALLED 911 | |
| 1402 | NOT AT SCENE - NON-ARREST | |
| 1502 | NO - NO PHOTOS TAKEN | |
| 1602 | NO - FAMILY/WITNESS PRESENT | |
| 1701 | CHILDREN PRESENT - 0 | |
| 1801 | NONE - NO ABUSE / NEGLECT | |
| 1903 | VERBAL ARGUMENT | |
| 1904 | THREAT TO INJURE | |
| 1921 | THREATS WITH WEAPON(S) | |
| 2001 | AFRAID - VICTIMS CONDITION | |
| 2007 | NERVOUS - VICTIMS CONDITION | |

Exhibit "2", P. 4.

95.  Rather than arrest Brandon Chambers for such illegality, the NASSAU COUNTY Defendants did proceed to Plaintiffs' home without a warrant for the purpose of arresting Plaintiff J.S. and seizing property.

20

96.    NASSAU COUNTY Defendants knew and had reason to know of the felonious relationship and yet proceeded to treat this matter as one that was a domestic incident:

*MORE CORE (continued...)*

| | |
|---|---|
| 2009 | UPSET - VICTIMS CONDITION |
| 2102 | NO - WEAPON NOT USED |
| 2201 | NONE - NO WEAPON |
| 2302 | NO - NO GUNS IN HOUSE |
| 2402 | NO - GUNS NOT SEIZED |
| 2502 | NO - NO PISTOL LICENSE |
| 2601 | NONE - INVOICED |
| 2705 | NONE - ACTION TAKEN |
| 2808 | AGGRAVATED HARASSMENT |
| 2903 | REFERRAL - COURT |
| 2907 | REFERRAL - DOMESTIC VIOL SVS |
| 2908 | REFERRAL - NC COALITION |
| DV | DOMESTIC INCIDENT |

Exhibit "2", P .5

97.    NASSAU COUNTY Defendants, instead of obtaining a warrant, did make forcible entry into Plaintiffs home that early evening.

98.    NASSAU COUNTY Defendants, through Saurez and Gibbs, did intimidate Plaintiffs and seize J.S. without a warrant.

99.    Gibbs and Saurez never told Linda Snyder that her daughter was being arrested but that she could pick her daughter up at 99 Main Street, Hempstead, New York after they spoke to J.S.

100.    Plaintiffs allege that the NASSAU COUNTY Defendants (collectively and individually) seized Plaintiffs' property, a cellular phone, without warrant, exigency or due process and Defendants (collectively and individually) refused to return property prior to and after the dismissal of the criminal case against Plaintiff J.S.

21

101.    NASSAU COUNTY Defendants were negligent, while Plaintiffs were in Defendants' custody, in their failure to protect the rights of Plaintiff J.S. and failing to contact the NASSAU COUNTY POLICE DEPARTMENT Internal Affairs Bureau and failing to investigate, intervene, remedy and/or prosecute the illegal actions of the Defendants as described herein.

102.    NASSAU COUNTY Defendants were grossly negligent, recklessly and/or intentionally breached their duties of care and duties to intervene with respect to their interactions with and treatment of Plaintiffs as further described below.

103.    Plaintiffs further alleges that Defendants, NASSAU COUNTY and NASSAU COUNTY POLICE DEPARTMENT, (collectively and individually) were negligent in training, hiring and supervising its NASSAU COUNTY POLICE DEPARTMENT, employees, representatives, and/or agents. Specifically, NASSAU COUNTY and NASSAU COUNTY POLICE DEPARTMENT failed to investigate, arrest and act upon the utilization of false imprisonment, false arrest, defamation, slander, fraud, abuse of process, and false allegations of criminality and seizure of property without a warrant, due process or avenue for the return of property as employed against Plaintiffs.

104.    Plaintiffs allege that NASSAU COUNTY Defendants did knowingly, negligently, or reckless present charges without probable cause or arguable probable cause to the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE.

105.    Accordingly, NASSAU COUNTY Defendants are liable to the Plaintiffs for abuse of process, false imprisonment,

22

malicious prosecution, conspiring to condone and encourage such civil rights violations, HIPPA Violations, due process violations, Fifth, Sixth and Fourteenth Amendment violations, taking of property without due process, refusal to compensate or return property and failing to intervene against such illegalities against Plaintiffs, for conspiring to violate Plaintiffs' Civil Rights, and for maliciously failing to investigate, reprimand and/or punish the actions of the individual Defendants. Such actions were taken against Plaintiffs, upon information and belief, based upon Plaintiffs' age and vulnerability.

106.    As a result of the Defendants' actions (or lack thereof), Plaintiffs suffered pain, loss of educational opportunities/employment, emotional scarring and suffering, were caused to undergo psychological treatment for injuries sustained at the hands of NASSAU COUNTY Defendants as a result of the above violations.

107.    Plaintiffs incurred significant cost and expenses due to the Defendants' actions, including but not limited to: substantial legal fees, medical bills, loss of liberty, loss of good name and standing in the community, lost wages, loss of employment, loss of educational opportunities, emotional distress and other costs/expenses.

### DEFENDANT MADELINE SINGAS AS NASSAU COUNTY DISTRICT ATTORNEY, NAMED IN HER OFFICIAL CAPACITY

108.    Madeline Singas is the duly elected District Attorney of Nassau County ("Singas").

109.    She is named in her official capacity.

23

110. Ms. Singas/the District Attorney of Nassau County is named to enjoin such person from obtaining incriminating evidence from persons represented by counsel, from administering and/or collecting information without HIPPA release from accused youth and utilizing information obtained from accused youth to prosecute or investigate crime.

111. According to information posted on its official website, http://www.nassauda.org/299/Meet-District-Attorney-Madeline-Singas, "as District Attorney, Madeline [Singas] has focused efforts on combatting drug and gun trafficking, violent gangs and sexual assaults. Using innovative investigative strategies, collaborative partnerships and intelligence-based prosecution models, she has effectively dismantled narcotics and gang enterprises within Nassau County and beyond its borders. She has dedicated unprecedented resources to battle the epidemic of heroin and opiate abuse plaguing Nassau County, prioritizing education to prevent addiction and treatment for those abusing drugs. In addition, she is committed to aggressively investigating and combatting government corruption to protect taxpayers from those who abuse the public trust."

112. According to information posted on its official website, http://www.nassauda.org/299/Meet-District-Attorney-Madeline-Singas, "Madeline [Singas] priorities are driven and informed by more than two decades of experience as a courtroom prosecutor, trying and overseeing thousands of criminal cases. She began her career as an Assistant District Attorney in Queens at the height of the crack wars, working her way through the ranks prosecuting murderers,

24

batterers, and other violent criminals. In 2006, she joined the Nassau County District Attorney's Office as chief of Nassau's newly-created Special Victims Bureau, bringing her expertise to serve the most vulnerable victims--children, the elderly, and victims of domestic and sexual abuse.

113.   According to information posted on its official website, http://www.nassauda.org/299/Meet-District-Attorney-Madeline-Singas, "[i]n 2011, Madeline was appointed Chief Assistant District Attorney, and worked to design and implement specialized programs for adolescent offenders, veterans, and those who suffer from mental illness or drug addiction. She was elevated to the role of Acting District Attorney in January 2015 and elected to a four- year term in November 2015."

114.   According to information posted on its official website, http://www.nassauda.org/27/About-the-Office on the page entitled, "Mission statement," "[t]he function of the Nassau County District Attorney's Office is to investigate and prosecute violations of state and local criminal statutes occurring within Nassau County. With more than 160 lawyers and a total staff in excess of 300, the Nassau County District Attorney's Office is one of the largest district attorney's offices in the country. Situated on Long Island, immediately to the east of New York City, the office is committed to hiring the most qualified attorneys, investigators and support staff. The office is dedicated to constant philosophical and technological modernization and looks forward to implementing ever-changing strategies that allow it to stay one step ahead of criminal behavior."

115.   Accordingly, Ms. Singas obtains information from the ADP program and the ADP interview(s) from Defendants, arraigned and represented by counsel, without the advice of counsel.

116.   Accordingly, Ms. Singas obtains psychological evaluation(s) from the ADP program Defendants who do not provide HIPPA consent to the release such information to the Nassau County District Attorney's Office.

117.   Ms. Singas utilizes information provided in the ADP program to investigate other crimes.

118.   Ms. Singas knowingly utilizes the psychological examination conducted by ADP to determine whether to prosecute youth.

119.   Ms. Singas acts a policy maker in her involvement in the ADP program and the process of screening and obtaining information to be utilized in subsequent prosecutions.

120.   Ms. Singas cooperates and acts together with the Unified Court System, the Chief Judge of the State of New York and other various Nassau County entities to ensure that persons are evaluated by ADP, psychologically screened and that such information is returned to Ms. Singas as the District Attorney of the County of Nassau.

121.   Ms. Singas is named in this lawsuit so as to enjoin her participation in a program and process that takes vulnerable, young adults and subjects them to invasive psychological testing without informed consent, provides such information to various forms of government without HIPPA release, utilizes information obtained from represented parties without the advice of counsel, and subjects arraigned Defendants to self-incrimination and

26

divulgence of information about other criminal activity that is later utilized by the Nassau County District Attorney's Office to investigate other crimes.

### DEFENDANT NASSAU COUNTY POLICE DEPARTMENT

122. Defendant Nassau County Police Department is sued to enjoin the practice of referring youth to the ADP part, to enjoin the practice of obtaining the property of youth without a warrant and directing the Nassau County Police Department to cease warrantless entry into homes for the purpose of arresting youth later subject to the ADP.

123. As discussed above, Defendant Nassau County Police Department, through Patrick Ryder, is complicit with a program and process that takes vulnerable, young adults and subjects them to invasive psychological testing without informed consent, provides such information to various forms of government without HIPPA release, utilizes information obtained from represented parties without the advice of counsel, and subjects arraigned Defendants to self-incrimination and divulgence of information about other criminal activity that is later utilized by the Nassau County District Attorney's Office to investigate other crimes.

124. According to the website of Defendant Nassau County Police Department at https://www.pdcn.org/129/Vision-and-Mission on the page entitled, "Mission Statement," the following statements appear "**Our Mission**: To serve the people of Nassau County and to provide safety and improved quality of life in our communities through excellence in policing." "**Our Values**: The beliefs that guide our Department and our own behavior." "Loyalty: We care

27

about the people and the communities we serve. We are proud of the Department and the services we provide. We recognize the importance of all Department members and treat each other with fairness, loyalty, and respect."
**"Integrity**: We obey the law and respect the human dignity of all people. We are committed to honesty and ethical behavior in all our actions. We accept individual responsibility and accountability for our actions and decisions." **"Fairness:** We are dedicated to protecting the rights of all people. We believe all people deserve impartial and effective service from the Department. We are committed to fairness, strength, respect, and compassion in our interactions with the people we serve." **"Excellence**: We are committed to excellence in the service we provide. We are committed to excellence in the communities we serve. We are committed to excellence in our personal performance and professionalism."

125. According to the website of Defendant Nassau County Police Department at https://www.pdcn.org/129/Vision-and-Mission on the page entitled, **"Our Vision:** A statement of the expectations we have for the Department and ourselves as members of the Department." the following statements appear.

**"The Department and Community"** **"**In our vision for the future of the Department and the Community we strive to: Maintain and enhance the confidence and trust of the people we serve. Continually strengthen and expand the partnerships between the police and the communities we serve. Maximize community participation in identifying problems, developing solutions, and establishing relevant    Department priorities and policies. Effectively

28

resolve problems of the communities we serve while protecting life and property."

**"The Department and Service"** "In our vision for the future of the Department and its services, we strive to: Maintain and enhance the Department's tradition of excellence in police service to the community. Recognize the need for change aimed at developing innovative, effective and cost-efficient methods to deliver police service and to resolve problems. Seek community feedback and input on the quality and effectiveness of police services. Continually pursue excellence."

**"The Department and its Members"** "In our vision for the future of the Department and its members we strive for: Involvement of all members at all levels in identifying and resolving problems. Dedicated, well trained, well equipped, and well led members achieving excellent results through excellence in policing. Professional development for each member of the Department. Mutual respect among all Department members."

### DEFENDANT VILLAGE OF HEMPSTEAD, VILLAGE OF HEMPSTEAD POLICE DEPARTMENT

126.    The Village of Hempstead Police Department is a Department of the Incorporated Village of Hempstead which is a municipality organized and existing under and by virtue of the Village Law and other laws of the state of New York.

127.    At all times relevant in this Complaint, and upon information and belief, Defendant VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME

29

UNKNOWN) ROTH #1252 was employed by VILLAGE OF HEMPSTEAD, VILLAGE OF HEMPSTEAD POLICE DEPARTMENT throughout the events complained of herein. Defendant VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 (referred to hereinafter as "ROTH") is being sued in his individual and official capacities.

128. At all times relevant in this Complaint, and upon information and belief, VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOES # 1-10 were employed by VILLAGE OF HEMPSTEAD, VILLAGE OF HEMPSTEAD POLICE DEPARTMENT throughout the events complained of herein. VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOES # 1-10 are being sued in their individual and official capacities. Further, the aforementioned Defendants were acting under color of state law.

129. Collectively, VILLAGE OF HEMPSTEAD, VILLAGE OF HEMPSTEAD POLICE DEPARTMENT, VILLAGE OF HEMPSTEAD POLICE OFFICER ROTH AND VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1-10 are referred to as "HEMPSTEAD DEFENDANTS."

130. HEMPSTEAD DEFENDANTS were responsible for the intake of a complaint by an adult of twenty years or older, Brandon Chambers, that described an intimate relationship, see Exhibit "2", between himself and infant Plaintiff J.S.

30

131.    HEMPSTEAD DEFENDANTS knew and should have known that J.S. was the infant victim while Brandon Chambers was the perpetrator of a felonious relationship.

132.    HEMPSTEAD DEFENDANTS knew and should have known, through training or common sense, that sixteen year old girls cannot have a domestic relationship with someone five years older than them.

133.    HEMPSTEAD DEFENDANTS knew and should have known that Brandon Chambers was on probation at the time and was born on July 8, 1996.

134.    HEMPSTEAD DEFENDANTS knew and had reason to know that physical intimacy between a sixteen year old and a person five years old than that sixteen year old is conduct proscribed by the penal law in various degrees.

135.    HEMPSTEAD DEFENDANTS knew and should have known that J.S. had just turned seventeen in November of 2018 when Brandon Chambers alleged a relationship with her previous to January 2019.

136.    The Defendant Village of Hempstead and Village of Hempstead Defendants participate in a program and process that takes vulnerable, young adults and subjects them to invasive psychological testing without informed consent, provides such information to various forms of government without HIPPA release, utilizes information obtained from represented parties without the advice of counsel, and subjects arraigned Defendants to self-incrimination and divulgence of information about other criminal activity that is later utilized by the Nassau County District Attorney's Office to investigate other crimes.

31

### DEFENDANT NASSAU COUNTY PROBATION DEPARTMENT

137.    John Plackis, as Director of Probation, Nassau County Department of Probation, and the Nassau County Probation Officers John and Jane Doe # 1-10 are named here as Defendants for their participation in ADP, their use of a psychological examination without informed consent or HIPPA release and the distribution of protected health information to others.

138.    John Plackis, as Director of Probation is named in his official capacity only.

139.    Nassau County Department of Probation is an agency of Nassau County and, upon information and belief, receives federal funding.

140.    Nassau County Department of Probation, Nassau County Probation Officers John and Jane Doe # 1-10 are sued in their official and individual capacity for their involvement in the administration of psychological examinations under duress, without the assistance of counsel, forced self-incrimination of minors without informed consent and without HIPPA releases from parents of those accused minors.

141.    John Plackis, as Director of Probation, Nassau County Department of Probation, and Nassau County Probation Officers John and Jane Doe # 1-10 are referred to herein as PROBATION DEFENDANTS.

142.    The PROBATION DEFENDANTS participate in a program and process that takes vulnerable, young adults and subjects them to invasive psychological testing without informed consent, provides such information to various forms of government without HIPPA release, utilizes

information obtained from represented parties without the advice of counsel, and subjects arraigned Defendants to self-incrimination and divulgence of information about other criminal activity that is later utilized by the Nassau County District Attorney's Office to investigate other crimes.

143. According to its official website, https://www.nassaucountyny.gov/1859/Probation, on the page entitled, "Vision," "The Probation Department fosters the essential system reform necessary to provide better outcomes for juvenile and adult offenders while better utilizing diminishing system resources. Probation will continue to build on its collaborative relationship with State and local juvenile and criminal justice stakeholders."

144. According to its official website, https://www.nassaucountyny.gov/1859/Probation, on the page entitled, "Mission," "The Probation Department strives to make Nassau County a safer community by providing cost-effective, outcome-driven alternatives to incarceration that focuses on providing timely and appropriate evidence-based services to offenders that will mitigate the individual's risk of recidivism.  at the same time, Probation will hold fully accountable those offenders who do not benefit by the opportunity to achieve positive change in their lives."

145. PROBATION DEFENDANTS are assigned to minors who are accused but not convicted of a crime.

146. THE HON. JANET DiFIORE as CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK and the Chief Judge of the Court of Appeals and HON. NORMAN ST. GEORGE, District

33

Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** utilize their positions to create a program which, while well intentioned, violates the Federal Constitutional Rights of minors enrolled in the ADP program.

147. THE **HON. JANET DIFIORE** as **CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK** and the Chief Judge of the Court of Appeals and **HON. NORMAN ST. GEORGE,** District Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** utilize their positions to instruct parents to sign their children into ADP.

148. TO BE CLEAR: Parents do not have the right to opt-out of ADP. See Exhibits "4" and "5".

149. EVEN IF PARENTS DO NOT CONSENT AND REFUSE PSYCHOLOGICAL EXAMINATION, the parents are forced to make an appearance in ADP. See Exhibits "4" and "5".

150. As a result of the above, arraignment court judges in Nassau County engage in a pattern of ordering the appearance of a minor Defendant to the PROBATION DEFENDANTS for the purpose of a psychological examination without informed consent and without HIPPA release.

151. THE **HON. JANET DIFIORE** as **CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK** and the Chief Judge of the Court of Appeals and **HON. NORMAN ST. GEORGE,** District

Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** utilize their positions to Order youth to appear before Nassau County Probation who obtains privileged psychological information from arraigned Defendants without the presence of counsel.

152.  THE **HON. JANET DIFIORE** as **CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK** and the Chief Judge of the Court of Appeals and **HON. NORMAN ST. GEORGE,** District Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** utilize their positions to Order youth to appear before Nassau County Probation who then obtains data from represented criminally accused minors that is turned over to the Nassau County District Attorney's Office.

153.  THE **HON. JANET DIFIORE** as **CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK** and the Chief Judge of the Court of Appeals and **HON. NORMAN ST. GEORGE,** District Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** arraign criminally accused minors and then send those criminally accused minors to PROBATION DEFENDANTS.

154.  THE **HON. JANET DIFIORE** as **CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK** and the Chief Judge of the Court of Appeals and **HON. NORMAN ST. GEORGE,** District

Administrative Judge, County of Nassau in their representative capacities as the administrative and procedural managers and supervisors of **THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT** are referred to herein as "COURT DEFENDANTS."

155. NASSAU COUNTY LEGAL AID, THROUGH ITS ATTORNEY IN CHIEF, N. SCOTT BANKS, is named in their official capacity only because of their condoning such practice without objection and without raising these issues on behalf of an entire class of persons vulnerable *and* indigent thus unable to afford private counsel.

156. COURT DEFENDANTS allow PROBATION DEFENDANTS to obtain information from criminal accused minors by COURT DEFENDANTS Ordering the criminal accused minors to appear before PROBATION DEFENDANTS. See Exhibits "4" and "5"

157. This pattern and practice of violation of HIPPA, the right to remain silent, the right to counsel, the right to informed consent and other various rights not otherwise enumerated in the Constitution of the United States culminated with the evaluation of Plaintiff J.S. (Exhibit "6", FILED UNDER SEAL) to which PROBATION DEFENDANTS refuse to provide the actual scale/results of the scale administered to J.S. without the assistance of counsel.

158. The endorsement of the above PROBATION DEFENDANTS by COURT DEFENDANTS is utilized as part of a greater scheme with NASSAU COUNTY DEFENDANTS to extract information from represented minors.

159.    The Defendants sued in their official capacity herein are either part of that process directly, create a policy surrounding such process or are implicit in the operation of such process in derogation of the rights of the accused, the rights of minor children, HIPPA rights and federally protected rights under the Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

160.    The ADP Class is composed of persons who similarly suffered violations of HIPPA, the right to remain silent, the right to counsel, the right to informed consent and other various rights not otherwise enumerated in the Constitution of the United States.

### DEFENDANT THE UNIFIED COURT SYSTEM OF THE 10TH JUDICIAL DISTRICT

161.    With the best of intentions, the Unified Court System of the 10th Judicial District endorses and enforces the mandate that criminal accused minors report to ADP.

162.    The Unified Court System of the 10th Judicial District is named in its official capacity only and through HON. JANET DIFIORE as CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK and the Chief Judge of the Court of Appeals and HON. NORMAN ST. GEORGE.

163.    HON. JANET DiFIORE as CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK and the Chief Judge of the Court of Appeals and HON. NORMAN ST. GEORGE are named in their official capacity only and not for money damages.

164.    HON. JANET DiFIORE as CHIEF JUDICIAL OFFICER OF THE STATE OF NEW YORK and the Chief Judge of the Court of

Appeals and **HON. NORMAN ST. GEORGE** are named in their official capacity because of their role in creating rules and guidelines for arraignment court judges to order criminally accused minors to appear in before PROBATION DEFENDANTS and to submit to psychological testing without informed consent.

165. The Unified Court System of the 10th Judicial District participates in a program and process that takes vulnerable, young adults and subjects them to invasive psychological testing without informed consent, provides such information to various forms of government without HIPPA release, utilizes information obtained from represented parties without the advice of counsel, and subjects arraigned Defendants to self-incrimination and divulgence of information about other criminal activity that is later utilized by the Nassau County District Attorney's Office to investigate other crimes.

166. According to information posted publicly on its official website, http://www.nycourts.gov/courts/10jd/index.shtml, "The County Court is established in each county outside New York City. It is authorized to handle the prosecution of all crimes committed within the County. ...
City Courts Outside New York City exist in 61 cities and have criminal jurisdiction over misdemeanors and lesser offenses ... City Court judges act as arraigning magistrates and conduct preliminary hearings in felony cases.
There are District Courts in Nassau County ... . District Courts have criminal jurisdiction over misdemeanors and lesser offenses, ....
Town and Village Courts have criminal jurisdiction over violations and misdemeanors, ... As magistrates, Town and

38

Village Court justices hold arraignments and preliminary hearings for those charged with more serious crimes. Traffic infractions also are heard in these courts."

167. The various courts that arraign criminally accused minors by these Defendants (sued in their official capacity only) are later subjected to constitutional violations and act as a source of information for the District Attorney's Office and statistical studies utilized by Defendant NASSAU COUNTY.

### DEFENDANT THE LEGAL AID SOCIETY OF NASSAU COUNTY

168. The head of the Legal Aid Society of Nassau County, N. SCOTT BANKS, is sued in its official capacity only.

169. The LEGAL AID DEFENDANTS participate in a program and process that takes vulnerable, young adults and subjects them to invasive psychological testing without informed consent, provides such information to various forms of government without HIPPA release, utilizes information obtained from represented parties without the advice of counsel, and subjects arraigned Defendants to self-incrimination and divulgence of information about other criminal activity that is later utilized by the Nassau County District Attorney's Office to investigate other crimes.

170. The Legal Aid Society of Nassau County is a Section 501(c)(3) non-profit organization located in Hempstead, New York. It was created to provide legal representation to persons who are unable to hire attorneys in criminal legal matters and in certain family court matters, including child custody and support issues in Nassau County pursuant to New York County Law, Article 18, §722.1

171.   The Legal Aid Society of Nassau County  receives its
       funding from Nassau County and State grants to pay for
       salaries of attorneys, paralegals and administrative staff to
       provide free legal services for the indigent.

172.   The Legal Aid Society of Nassau County is divided into 4
       legal bureaus: County Court (felony criminal cases),
       District Court (misdemeanor criminal cases), Family Court,
       and Appeals (both criminal and Family court cases)

173.   The Legal Aid Society of Nassau County does not choose or
       select which parties will become clients. Parties seeking
       representation of Nassau Legal Aid must ask a criminal or
       family court judge to assign The Legal Aid Society of
       Nassau County to their case.

### DEFENDANT CIVILIAN CONTRACTORS

### MARY MCCORMICK, AS C.E.O. OF CENTER FOR COURT INNOVATION FUND FOR THE CITY OF NEW YORK, AND THE CENTER FOR COURT INNOVATION

174.   According to information posted publicly on its official
       website, https://www.courtinnovation.org/about "The
       Center for Court Innovation seeks to help create a more
       effective and humane justice system."

175.   Mary McCormick, as C.E.O. of Center for Court Innovation
       Fund for the City of New York, and the Center for Court
       Innovation works in whole or in part with the other
       Defendants named in their Official Capacity, the
       HEMPSTEAD DEFENDANTS, PROBATION
       DEFENDANTS, NCPD and the COUNTY OF NASSAU to
       obtain information from minors and use information from
       minors which, as mentioned above, is done without
       informed consent or with HIPPA release.

40

176.   According to information posted publicly on its website
https://www.courtinnovation.org/about The Center for
Court Innovation was "founded as a public/private
partnership between the New York State Unified Court
System and the Fund for the City of New York, the Center
for Court Innovation creates operating programs to test
new ideas and solve problems, performs original research
to determine what works (and what doesn't), and provides
expert assistance to justice reformers around the world."

177.   According to information posted publicly on its website
https://www.courtinnovation.org/about The operating
principle of the Center for Court Innovation was adapted
from The Process Is The Punishment, by Malcolm Feeley,
"The traditional criminal justice system is bereft of any
real research and development functions, so new ideas
from entrepreneurs on the outside should be encouraging…
New York City's Center for Court Innovation is now the
premier institution [at fostering innovation]."

178.   According to information posted publicly on its website
https://www.courtinnovation.org/about "The Center
conceives, plans, and operates programs that seek to test
new ideas, solve difficult problems, and achieve system
change. Our projects include community-based violence
prevention projects, alternatives to incarceration, reentry
initiatives, and court-based programs that reduce the use
of unnecessary incarceration and promote positive
individual and family change. Some of our projects are big,
serving thousands of people each year. And some are small,
working intensively with a few dozen people at a time. No
matter the size or the topic, our approach is always the
same: thoughtful planning, an emphasis on creativity, and

41

the rigorous use of data to document results. Our efforts have produced tangible results like safer streets, reduced incarceration, and improved neighborhood perceptions of justice."

179. According to information posted publicly on its website https://www.courtinnovation.org/about "Key to our work is the idea of collaboration. To get things done, we partner with a broad range of government, nonprofit, and community agencies. We have a strong relationship with government in New York—especially the state court system, for which we provide ongoing strategic advice and programming."

180. According to information posted publicly on its website https://www.courtinnovation.org/about "Researchers at the Center conduct independent evaluations, documenting how government systems work, how neighborhoods function, and how reform efforts change things. We have performed multiple randomized controlled trials. Our researchers have been published in numerous peer-reviewed journals. And we have published much-cited studies that have looked at such topics as youth in the sex trade, reentry court, and drug treatment as an alternative to incarceration. We believe in the "action research" model; accordingly, our researchers provide regular feedback on the results of the Center's own operating programs. The Center disseminates information about justice reform through books and other publications, videos, podcasts, social media (including Facebook and Twitter), and other vehicles."

181. According to information posted publicly on its website https://www.courtinnovation.org/about "The Center for

42

Court Innovation provides hands-on, expert assistance to reformers around the world, including judges, attorneys, justice officials, community organizations, and others. Having launched dozens of innovative justice initiatives, we know firsthand the nuts-and-bolts of how to get a new project off the ground. Experts from the Center for Court Innovation are available to help plan, implement and evaluate new policies, practices, and technologies. Our assistance takes many forms, including help with analyzing data, facilitating planning sessions, and hosting site visits to our operating programs in the New York City area."

182.    According to information posted publicly on its website https://www.courtinnovation.org/about "The Center for Court Innovation grew out of a single experiment, the Midtown Community Court, which was created in 1993 to address low-level offending around Times Square. The project's success in reducing both crime and incarceration led the court's planners, with the support of New York State's chief judge, to establish the Center for Court Innovation to serve as an ongoing engine for justice reform in New York. The Center's founding director was John Feinblatt. It is currently run by Greg Berman, who was also part of the founding team.

183.    According to information posted publicly on its website https://www.courtinnovation.org/about "Over the years, we have helped design, implement and run over three dozen operating programs (many of which now function independently of the Center, such as the Brooklyn Treatment Court), produced original research about hundreds of justice initiatives, and hosted tens of

43

thousands of visitors interested in justice reform. We are proud to have received numerous awards for our work, including the Peter F. Drucker Prize for Non-Profit Innovation and the Innovations in American Government Award from Harvard University and the Ford Foundation.

## Civilian contractor's duty of care

184.   That the Defendant Corporate government contractors, their management executives, employees, agents and subcontractors who provided independent professional services to one or more of the Nassau County Defendants and owed Representative Plaintiffs and members of the Class a duty to take reasonable care to protect the HIPPA, constitutional and civil rights of accused but unconvicted adolescent defendants and all the members of the Plaintiff class.

### DEFENDANT BRANDON CHAMBERS

185.   Upon information and belief, Defendant Brandon Chambers it is a convicted felon.

186.   Defendant Brandon Chambers conspired with the Defendants jointly and severally, individually and collectively with Defendants to prosecute Plaintiff J.S. on charges which were dismissed as unsupported by any substantial credible evidence.

187.   Upon information and belief, Defendant Brandon Chambers provided law enforcement information regarding criminal activity at several points to which he was considered a reliable source of information for prosecutions and arrests.

44

188. Defendants, collectively, knew and should have known that Brandon Chambers was, himself, engaged in criminal activity, was an unreliable source of information, and his complaint against J.S. had provided no arguable probable cause or legal basis therefore and was an admission against his own penal interest.

189. Defendant Brandon Chambers intended to and did injure and damage Plaintiff J.S. and her mother, Plaintiff Linda Snyder.

## THE ADOLESCENT DIVERSION PROGRAM

190. ADP was created with the best of intentions but is ultimately utilized in such a manner that the criminally accused minor is without the ability to utilize counsel, without informed consent and a health record is created and disseminated (to, among others, the prosecution) without HIPPA release(s).

191. Previous to Hon. Janet DiFiore, "On January 17, 2012, New York State Chief Judge Jonathan Lippman established a pilot Adolescent Diversion Program (ADP) in nine counties, including the five boroughs of New York City, the suburban counties of Nassau and Westchester, and the upstate counties of Erie and Onondaga (housing the respective mid-sized cities of Buffalo and Syracuse)." Exhibit "7", P. 5.

192. "Participating defendants receive a clinical assessment, age appropriate services, rigorous compliance monitoring, and non-criminal case outcome should they complete assigned services." *Id.*

193.    "A youth's participation in ADP is voluntary in that the youth may always elect the mainstream adult process. However, participation has many benefits, not the least of which is that many, if not most, case resolutions in ADP involve pleas to non -criminal violations (in lieu of misdemeanors) or adjournments in contemplation of dismissal." *Id.*

194.    While allegedly voluntary, parents do not receive informed consent and are coerced to sign before an arraignment court judge in Hempstead District Court. See Exhibits "4" and "5".

195.    The ADP program in practice does not allow for voluntary participation insofar as even if the youth's parents refuse (see *id.*), the criminal accused minor must still appear in the ADP.

196.    According to the New York State Unified Court System Office of Policy & Planning, "Overview," document in 2017, "Each year across New York State, between 40,000 and 50,000 young people ages 16 and 17 are arrested and processed as adults in the criminal justice system. These young people face criminal convictions that could affect their future ability to gain employment, complete their education, obtain housing and pursue a range of other important life goals."

197.    According to the New York State Unified Court System Office of Policy & Planning, "The Adolescent Diversion Parts are designed to improve the way the criminal justice system treats 16 and 17 year old teenagers charged with non-violent offenses in criminal court. They emphasize court outcomes designed to help these young people avoid

the legal and collateral consequences associated with conviction and link them with the assistance they need to pursue law-abiding, productive futures."

198. The pilot program involved courts in nine (9) counties - Bronx, Erie, Kings, Onondaga, Nassau, New York, Richmond, Queens, and Westchester Counties.

199. In 2012, Nassau County was one of the nine sites that partnered with the state Office of Court Administration (OCA) to pilot an Adolescent Diversion Program targeting 16- and 17- year-olds who were arrested. OCA initiated the program, which treated these individuals differently from adults who had been arrested.

200. Nassau County, however, appears to have deviated from the voluntary nature of the program, its requirement of informed consent and the need for HIPPA release(s) for the use of such information.

201. NASSAU COUNTY DEFENDANTS have utilized the ADP program to garner information that is used to investigate crime by the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE.

202. According to the Criminal Justice Knowledge Bank Program Summary, "The Nassau program sought to minimize the contact these youths had with the justice system by using a risk and needs assessment to identify those who required services and those whose cases could be quickly dismissed to avoid disrupting pro-social activities, such as attending school."

203. According to the Criminal Justice Knowledge Bank Program Summary, "The Nassau County Adolescent Diversion Program is a specialized court part established

47

for 16- and 17-year-old defendants that seeks to minimize exposure to the adult criminal justice system and reduce recidivism in adolescents through early intervention. The program emphasizes reducing youth contact with the system and rehabilitation by focusing on the risk and needs of the defendant, not the offense."

204. According to the Criminal Justice Knowledge Bank Program Summary, as of October 2018, the program serves only 17-year-olds.

205. According to the Criminal Justice Knowledge Bank Program Summary, "The Adolescent Diversion Program arraigns all eligible adolescents in a special proceeding. The Nassau County Probation Department assesses the youth using a juvenile risk and needs assessment tool that categorizes the adolescent as low, medium or high risk. A key element of the program is that youth who score low risk generally have their cases immediately dismissed by the district attorney's office. In 2015, the courts dismissed or adjourned in contemplation of dismissal approximately 76 % of all low-risk cases on the first court appearance, a dramatic change from past practice."

206. According to the Criminal Justice Knowledge Bank Program Summary, "For the cases that are not dismissed outright, the program provides individuals with age-appropriate, individualized rehabilitative services. Youth engage in constructive, meaningful activities, rather than paying a fine, being placed on probation, or being incarcerated. Adolescents may participate in community service, counseling, drug treatment, family mediation, and educational and vocational training. An Adolescent Diversion Program Resource Coordinator monitors cases

48

and meets with probation officers, school officials, and other stakeholders to ensure program participants complete the court-ordered requirements."

207. According to the Criminal Justice Knowledge Bank Program Summary, "Along with providing customized services, the program seeks to reduce the amount of time a youth spends in the criminal justice system. Those who cases are dismissed are dismissed quickly, and those assigned more structured treatment plans move rapidly through the system. The length of time it takes for youth to complete the program is generally about one month for a violation, two months for a misdemeanor, and four months for a felony"

208. According to the Criminal Justice Knowledge Bank Program Summary, "Keeping the number of court appearances to a minimum is also critical. The program limits court appearances to an average of one per violation, two per misdemeanor, and four per felony."

209. Purportedly, the Nassau County Adolescent Diversion Program is a specialized court part established for 16- and 17-year-old defendants that seeks to minimize exposure to the adult criminal justice system and reduce recidivism in adolescents through early intervention.

210. The program was intended to emphasize reducing youth contact with the system and rehabilitation by focusing on the risk and needs of the defendant, not the offense.

211. The Nassau County District Attorney funds a Resource Coordinator position with asset forfeiture funds. The Office of Court Administration also supports an additional position.

212. According to a Nassau County Vendor Contract (Exhibit "8"), "The Center for Court Innovation (the Center) is a unique public/private partnership between the New York State. Unified Court System and the fund for the City of New York. The Center has an ongoing, formal contractual relationship with the Unified Court System and functions as it research and development arm."

213. According to a Nassau County Vendor Contract (Exhibit "8"), "The Nassau County Adolescent Diversion Part is a groundbreaking partnership between the Office of Court Administration. the Nassau County District Attorney's Office, the Center for Court Innovation, as well as numerous service providers in Nassau County. This program ensures that adolescents ages 16 and 17 years old receive the benefit of appropriate services and reduces the likelihood that they will be trapped in a cycle of reoffending."

214. According to a Nassau County Vendor Contract (Exhibit "8"), "The Resource Coordinator's Role: The Adolescent Diversion Part seeks to help teenage defendants avoid the legal and collateral consequences associated with criminal prosecution and receive the assistance they need to pursue law-abiding, productive futures. The initiative has fundamentally re-engineered how the cases of 16 and 17 year olds are dealt with in criminal court."

215. According to a Nassau County Vendor Contract (Exhibit "8"), "The Resource Coordinator reviews each assessment and makes a recommendation to the Court regarding appropriate treatment or alternative program referrals."

50

216.     According to a Nassau County Vendor Contract (Exhibit
         "8"), "All cases involving 16 and 17 year olds charged with
         misdemeanors and, in certain cases, non-violent felonies
         are assigned to the Adolescent Diversion Part. Each
         defendant is then required to have a validated assessment
         by Probation using the Youth Assessment Screening
         Instrument (YASI). The Resource Coordinator reviews each
         assessment and makes a recommendation to the Court
         regarding appropriate treatment or alternative program
         referrals."

217.     According to a Nassau County Vendor Contract (Exhibit
         "8"), "Each sentencing decision is informed by the brief
         YASI assessment conducted prior to the defendant's court
         appearance"

218.     According to a Nassau County Vendor Contract (Exhibit
         "8", P.11), "The Nassau County Adolescent Diversion Part
         is a groundbreaking partnership between the Office of
         Court Administration, the Nassau County District
         Attorney's Office, the Center for Court innovation, as well
         as numerous service providers in Nassau County"

219.     According to a Nassau County Vendor Contract (Exhibit
         "8", Exhibit C), "WHEREAS, the County wishes to allow
         the Contractor to have access to Protected Health
         Information ("PHI"), including but not limited to,
         Electronic Protected Health Information ("EPHI") which is
         either provided to the Contractor by the County, or
         received, viewed, or created by the Contractor on behalf of
         the County in the course of performing the Service
         hereinafter set forth"

220. According to a Nassau County Vendor Contract (Exhibit "8", P. 21), "Contractor understands it is not in compliance with the HIPAA standards set forth in Sections 164.502(e) and 164,504(e)if the Contractor knows of a pattern of activity or practice that the County engages in which constitutes a material breach or violation of the County's obligation under a contract or other business arrangement, unless the Contractor takes reasonable steps to cure the breach or end the violation, as applicable, and if in taking steps to cure or end the breach it is unsuccessful, the Contractor must terminate the contract or arrangement if feasible, and if not feasible, the Contractor must report the problem to the Secretary."

221. The vendor contract details that Nassau County is providing PHI and EPHI to an independent contractor.

222. The vendor contract further details that the Contractor is required to access PHI/EPHI.

223. DEFENDANTS, and all of them, provide nothing that details procedures whereby a Defendant can make a voluntary, informed and knowing waiver of his or her rights (whether it be the Plaintiff-parent class or the Plaintiff-minor class) in divulging PHI and EPHI to Nassau County.

224. According to a Nassau County Vendor Contract (Exhibit "8"), "The Adolescent Diversion Program arraigns all eligible adolescents in a special proceeding. The Nassau County Probation Department assesses the youth using a juvenile risk and needs assessment tool that categorizes the adolescent as low, medium or high risk. A key element of the program is that youth who score low risk generally

have their cases immediately dismissed by the district attorney's..."

225. J.S. was arraigned in Nassau County, Hempstead District Court and sent to ADP for her next court date after she submitted to a psychological examination.

226. J.S. filed Criminal Procedure Law Article 240 discovery demands prior to her being sent to ADP. To date, such demands are still not answered.

227. The above paragraph, that low risk scores (see, e.g. Exhibit "6" under seal) are dismissed is not accurate – not only was J.S. subjected to the ADP over protest from her counsel, J.S.' defense attorney did state that there was a statutory rape of his client and that the criminal accusation was completely without factual basis, that his client was arrested without a warrant and that her cellular phone taken without a warrant to which the judge replied that this was "not a litigation part."

228. ADP does not provide adequate constitutional protections as other parts within the Hempstead District Court.

229. ADP does not allow for the protections provided to New York Criminal Defendants under the New York Criminal Procedure Law.

230. According to the New York State Unified Court System Office of Policy & Planning, "under the program, participating judges have access to youth-specific sentencing options, generally consisting of short-term social service interventions, as well as community service. This could include sessions devoted to conflict resolution, civic responsibility, and vocational and educational goal

setting. Wherever possible, sentencing decisions will be informed by a brief assessment."

231. According to the New York State Unified Court System Office of Policy & Planning, "Interventions will, in most cases, be intended to build concrete life skills and promote personal accountability. Services will be age-appropriate and address the unique emotional and developmental needs of adolescents. Similarly, community service projects will target conduct associated with youthful transgressions, such as graffiti, fare evasion and trespass. Compliance with court-imposed conditions will be monitored by program staff with the cases of non-compliant defendants returned to court for further action. In general, the program would seek to use short-term interventions as a springboard to voluntary engagement in longer-term services."

232. One study found that "No overall effect of the ADP was found for any outcome measure, but a fine-grained analysis revealed that ADP was indeed effective in reducing the rate of re-arrest (but not time to re-arrest) among youth whose demographic and criminal history profiles signaled a very high recidivism risk at baseline. Yet, ADP is a double-edged sword: among youth actuarially least likely to recidivate, ADP diversion increased the likelihood of re-arrest (and resulted in fewer days to re-arrest in the survival analysis)." Exhibit "9", P. 28.

233. According to a press release from Defendant Nassau County District Attorney ("NCDA") posted on March 2, 2017 celebrating the Fifth Anniversary of the "NCDA Adolescent Diversion Program," under the headline, "Specialized initiative resolves cases 70% faster and matches young offenders with services,"

54

234.   It went on further to state that, "NCDA relied on extensive research and data to ensure that this new program would identify the underlying drivers of crime, match defendants with the appropriate resources and minimize the interaction of the adolescent defendants with the court system. As a result, Nassau County's Adolescent Diversion Program focuses on the offender more than the offense and has a near 100% participation rate for non-violent offenders. The goal of Adolescent Diversion is to reduce convictions and recidivism rates among this vulnerable age group. In Nassau County, all 16 and 17- year old respondents who are facing non-violent criminal charges in Nassau County are immediately referred to ADP. They are then conditionally released to the Department of Probation where the evidence-based Youth Assessment and Screening Instrument (YASI) is performed to determine the youth's risk of recidivism, and to identify which services will best address the underlying causes that led to the child to offend. Studies show that adolescents with more contact with the criminal justice system are more likely to reoffend, so ADP seeks to minimize court appearances and the use of incarceration and parole. Some offenders receive outright case dismissals, while the remaining adolescents – who face one or more program requirement – are rapidly moved through their criminal justice experience. The length of ADP program completion is approximately one month for a violation, two months for a misdemeanor and four months for a felony, benefitting an overburdened court system."

235.   Defendant NASSAU COUNTY DISTRICT ATTORNEY, however, did collect data from these adolescents in

55

violation of their Fifth and Sixth Amendment rights using PROBATION DEFENDANTS.

236. Defendant NASSAU COUNTY DISTRICT ATTORNEY, however, did obtain psychological information from these adolescents in violation of their federal rights under, inter alia, HIPPA using PROBATION DEFENDANTS. Defendant

237. NASSAU COUNTY DISTRICT ATTORNEY with PROBATION DEFENDANTS did act as policy makes with other Defendants knowing that there was no consent into the ADP program but rather a criminal accused minor, an adolescent, would need to appear in ADP regardless of whether he or she agreed to such program. See Exhibits "4" and "5".

238. Defendant NASSAU COUNTY DISTRICT ATTORNEY did create a policy whereby the NASSAU COUNTY DISTRICT ATTORNEY did act as a policy maker in the regular use of ADP and PROBATION DEFENDANTS to violate the constitutional rights of the criminally accused minors, adolescents, that were subjected to a program with little to no statutory or constitutional protections.

239. Perhaps flawed but well intentioned, NASSAU COUNTY DEFENDANTS did operate the ADP program in a manner that regularly violated the rights of Plaintiffs and all others so similarly situated who were subjected to the Nassau County ADP.

## THE RISK-NEED-RESPONSIVITY MODEL

240. According to the Criminal Justice Knowledge Bank Program Summary, A risk and needs assessment can help determine which youth are low-risk and should move

quickly through the system. The Risk-Need-Responsivity Model of offender rehabilitation is composed of three core principles: 1) the risk principle asserts that the likelihood of criminal behavior can be reliably predicted and that treatment should focus on higher risk individuals; 2) the need principle highlights what areas in an individual's life should be targeted for intervention to decrease their likelihood of future criminal behavior; and 3) the responsivity principle describes how the treatment should be provided.

241.    Upon information and belief, the Nassau County Adolescent Diversion Program utilizes and relies upon the Risk-Need-Responsivity Model developed at the Center for Advancing Correctional Excellence at George Mason University.

242.    According to the Center for Advancing Correctional Excellence at George Mason University, "The evidence-based practices (EBP) framework emphasizes that justice agencies should match offenders to services and programs based on their risk and need factors ("the RNR Principles")."

243.    According to the Center for Advancing Correctional Excellence at George Mason University, the Risk-Need-Responsivity Model project was funded by the Bureau of Justice Assistance, the Substance Abuse and Mental Health Services Administration, and the Public Welfare Foundation.

244.    According to the Center for Advancing Correctional Excellence (ACE ) at George Mason University, ACE  has developed an RNR Simulation Tool to assist local, state,

and/or federal agencies in using the risk-need-responsivity approach in practice. in collaboration with Jim Byrne and April Pattavina from the Department of Criminal Justice & Criminology at the University of Massachusetts, Lowell, and Avinash Bhati from Maxarth, LLC, with web support from Slonky, LLC.

245.  According to the Center for Advancing Correctional Excellence at George Mason University, "This RNR Simulation Tool assists justice and behavioral health agencies (government, private, or non-profit) who wish to translate EBPs into practice. This approach integrates the science around effective screening, assessment, programs, and treatment matching (responsivity) to improve individual and system outcomes."

246.  According to the Center for Advancing Correctional Excellence at George Mason University, "The risk-need-responsivity (RNR) principle theory was developed by Andrews and Bonta in 1990. It integrates the psychology of criminal conduct into an understanding of how to reduce recidivism (Andrews & Bonta, 1994). Using this concept, they identify three principles to guide the assessment and treatment of offenders to advance rehabilitative goals as well as reduce risk to society from recidivistic crime.

247.  According to the Center for Advancing Correctional Excellence at George Mason University, "high- to moderate-risk individuals should be prioritized for more structured and more intensive treatment and control programs to maximize outcomes; low-risk individuals should be prioritized when they have high criminogenic needs."

58

248.    According to the Center for Advancing Correctional
        Excellence at George Mason University, "changeable
        factors that drive involvement in offending (criminogenic
        needs) are assessed. Criminogenic needs are generally
        dynamic. Taking into account those factors related to
        recidivism, the RNR Simulation Tool identifies two central
        spectrums of needs (Drug Dependence and Criminal
        Lifestyle) for higher need individuals and lifestyle issues.
        Factors that affect psychosocial functioning such as mental
        health condition, housing stability, and educational
        attainment are important stabilizers and destabilizers and
        should be used to determine the level of need."

249.    According to the Center for Advancing Correctional
        Excellence at George Mason University, "the yield from
        programming is maximized when treatments and controls
        responsive to the risk and needs of individual offenders.
        The risk-need nexus, plus the degree of stabilizers in the
        person's life, should determine the target behaviors to
        address in programming. Demographics such as
        developmental factors (age) and gender should affect
        programming to yield the greatest outcomes. The domains
        of recommended programs are: drug dependency, criminal
        lifestyle, drug abuse and mental health needs,
        interpersonal skill development, life skill development, and
        punishment only.

250.    According to the Center for Advancing Correctional
        Excellence at George Mason University, "General
        responsivity calls for the use of cognitive-behavioral
        approaches to treatment as such approaches have been
        shown to be most effective with offenders as a whole."
        Specific responsivity, however, acknowledges that non-

59

criminogenic needs may help or hinder the provision of and response to treatment, thus they need to be addressed in order to maximize recidivism reduction."

251. According to the Center for Advancing Correctional Excellence at George Mason University, "A major factor in achieving responsivity is the dosage or intensity of programming and controls. Higher risk and greater needs require more intensive interventions. To guide responsivity, the RNR Simulation Tool matches offenders to a level of programming and controls based on their risk level and criminogenic needs."

252. According to the Center for Advancing Correctional Excellence at George Mason University, "The RNR Simulation Tool consists of three easy to use portals. These portals are currently available through ACE's CJ-TRAK suite, a web-based compilation of translational tools for practitioners."

253. According to the Center for Advancing Correctional Excellence at George Mason University, "The Assess an Individual portal emphasizes using data from criminal justice and behavioral health screenings and assessments to determine the most effective type of program and controls to reduce individual recidivism. This portal can be used with a jurisdiction's instruments, by itself, or in combination with other tools. Designed for line staff, users are asked to answer 17 questions about individual offenders' risk, needs, and lifestyle factors. The system then provides a recommendation regarding the type of program that would best fit the individual and lead to the greatest recidivism reductions. If certain information is not available, the RNR Simulation Tool will rely upon its

underlying database of offender risk-need profiles to estimate likely attributes based on the prevalence of each attribute in the national population. Users can integrate jurisdiction-specific data regarding the prevalence of individual attributes to produce customized feedback. This portal also estimates a percent reduction in recidivism that one might expect if the offender is matched to the level of programming that is consistent with their unique needs (i.e., a program of best fit).

254. According to the Center for Advancing Correctional Excellence at George Mason University, there is a 30-minute "Rate Your Jurisdiction" "program assessment tool examines the content, quality, dosage, and other factors of services/treatments/controls offered for justice-involved individuals. Jurisdiction administrators or program managers simply input information about a specific program offered and the tool provides detailed feedback indicating what risk-need profiles the program is best suited to meet. The portal also rates the program's overall quality according to the RNR principles and core correctional practice. When applicable, the tool provides recommendations for how program administrators can refine the program to better achieve responsivity and improve outcomes. The three main goals of the program tool are: 1) to classify programs to facilitate treatment matching, 2) to explore how programs currently target the risk level and criminogenic needs of their clients, and 3) to assess programs on their use of evidence-based practices. The tool is intended to help criminal justice agencies better understand the resources available to them and to foster responsivity to specific risk-need profiles.

255.  According to the Center for Advancing Correctional Excellence at George Mason University, the RNR Simulation Tool provides an "Assess Jurisdiction's Capacity" portal which uses inputted information to assess a jurisdiction's capacity to be responsive to the risk-need profiles of individuals in its jurisdiction. Based on data from 18 questions about the prevalence of risk and needs of individuals in the jurisdiction, the portal provides an initial recommendation of the amount and type of programming needed to adequately respond to the jurisdiction's population. When users enter information regarding the available programs in a jurisdiction, the portal also identifies system-level gaps in the jurisdiction's capacity to provide responsivity and recommends levels of programming the jurisdiction may need to augment in order to better respond to the needs of their population.

## THE RISK FACTOR PREVENTION PARADIGM (RFPP)

256.  The purpose of RFPP is to enhance the decision-making process of the court.

257.  Utilizing risk factors to predict, much less influence, an individual's future behavior is ethically questionable.

258.  Utilizing risk factors to predict, much less influence, an individual's future behavior is fraught with interpretive difficulty regarding the measurement of risk factors and their portrayal as predictive of offending.

259.  A culture of misrepresentation and over-inflation of RFPP findings has conflated causality and correlation leading to asserting "risk factors" as predictive, regardless of the limitations of survey designs.

260.    There are methodological tensions relating to the ethical implications of early intervention predicated on identified risk factors, the populations interventions are made available to, and how the success of interventions is evaluated.

261.    Risk-focused early intervention is predicated on the identification of at risk young people and the amelioration of risk factors.

262.    Since the 1990s, the developmental *Risk Factor Prevention Paradigm* (RFPP) has influenced efforts to prevent crime and discourage criminality.

263.    Upon information and belief, the RFPP s empirically under- pinned by the longitudinal Cambridge Study of Delinquent Development (West and Farrington, 1973) and the Social Development Model (Catalano and Hawkins, 1996), both of which claim to identify key risk factors that increase the probability of offending.

264.    The ostensibly robust and burgeoning evidence-base around the RFPP has proved especially appealing for policy makers and practitioners.

265.    In 2000, a researcher opined,

266.    A key advantage of the risk factor prevention paradigm is that it links explanation and prevention, fundamental and applied research, and scholars and practitioners. Importantly, the paradigm is easy to understand and to communicate, and it is readily accepted by policy makers, practitioners, and the general public. Both risk factors and interventions are based on empirical research rather than theories. The paradigm avoids difficult theoretical questions about which risk factors have causal effects

63

267.    Upon information and belief, the precise definition of 'risk factors' and 'protective factors' has not been employed consistently across criminological research.

268.    Risk factors can assume the categories of an explanatory variable (*e.g.* poor parental supervision), a dichotomous variable (*e.g.* poor/good parental supervision) or a continuous explanatory variable (*e.g.* scale of parental supervision from poor to good).

269.    Traditionally, risk-focused research has employed regression techniques to identify risk factors statistically associated with and predictive of self-reported offending.

270.    The integration of too many variables within a logistic regression equation can produce highly correlated predictor variables. However, different variables that essentially measure the same underlying factor, multicollinearity can yield unstable and unreliable solutions.

271.    In order to properly interpret risk factor evidence, it is necessary to consider the cumulative impact of variables interacting statistically with each other and operating on different forms of offending sub-groups of the youth population.

272.    The causality–correlation issue has been complicated by the relative influence of the combinations of risk factors on offending individuals exposed to multiple risks.

273.    Issues of interpretation are further complicated by the multiple component interventions, which render it difficult, if not impossible, to identify who has received an intervention, how much of a certain intervention has been received and what the active ingredients of the overall

intervention strategy are thereby making linking inputs to outcomes accurately unlikely.

274.   It cannot be accurately determined whether risk factors are predictive in a causal sense or merely correlational and/or indicative of problem behavior, because it is impossible to fully control for the influence of extraneous variables over a prolonged period of study with human participants.

275.   Problematic is Nassau County's use of "The Resource Coordinator [who] reviews each assessment and makes a recommendation to the Court regarding appropriate treatment or alternative program referrals" that is later adopted by Nassau County that is determinative of the direction of the Court as managed by the District Attorney's Office.

276.   The Court program divests the Plaintiff ADP Class of a meaningful defense, the ability to understand the implications of a psychological examination (and where the results of the same is directed) which is then determinative in the prosecution of the Plaintiff Class.

277.   The snapshot nature of cross-sectional designs such as the Youth Assessment Screening Instrument (YASI) cannot offer the sustained monitoring and measurement of the relationship between risk factors and problem behavior afforded by longitudinal designs and precludes the identification of these factors as predictive in a causal sense.

278.   Accordingly, the use of YASI is not only inappropriate under the circumstances, it is used to violate the constitutional rights of the Plaintiff ADP Class and, worse,

it is an examination regularly distributed among NASSAU COUNTY DEFENDANTS without a HIPPA release.

### THE YOUTH ASSESSMENT SCREENING INSTRUMENT (YASI)

279.   According to an article entitled, "New York Courts Revisit Juvenile Justice," on March 12, 2012, in *Stateline*, an initiative of The Pew Charitable Trusts, at https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2012/03/12/new-york-courts-revisit-juvenile-justice, Nassau County District Attorney Kathleen Rice says , "The first step for each arrested youth is an interview using the Youth Assessment Screening Instrument, or YASI, a tool originally developed in Washington State that has become the standard for youth assessments in a number of court systems, including those in Virginia and Illinois."

280.   According to Orbis Partners, Inc., a commercial business organization which markets YASI, and claims to provide "solutions for the helping professions, specializing in designing and implementing evidence-based services for at-risk and high-risk client groups" and whose "services include assessment, programs, case work training and research and evaluation," "[t]he Youth Assessment and Screening Instrument (YASITM) measures risk, needs and strengths and helps develop case plans for at-risk youth. It can be used in juvenile probation, detention/secure custody, day reporting, youth services, schools, police diversion and other settings where there is a requirement to assess risk of negative outcomes and identify service needs. The YASI includes a brief "Pre- Screening" version (about 30 items) used to assist in early decision-making and assigning scarce case resources."

66

281.    Upon information and belief, YASI is a proprietary, trademarked commercial product provided by a privately-owned non-public company, Orbis Partners, Inc., which "can be made available to jurisdictions in service packages that might include customization, training, software, technical support, application consulting, coaching, quality assurance and validation/research services. Based on hosted solutions or licensed applications on the client's network, the Caseworks software includes unlimited use of the assessment tool for initial assessments and reassessments. Jurisdictions may also opt for a train-the-trainer certification process in order to meet the demand for ongoing training or include eTraining in the service package."

282.    According to Orbis Partners, Inc., "The YASI brings together a number of exciting new developments in youth assessment: improved links to case planning Inclusion of strengths; A sharper focus on dynamic reassessment; An abridged Pre-Screen for early case decisions." And that, "These developments received a boost from the Washington State juvenile assessment model (CMAP) in the late 90's. Based on the Washington model, YASI benefited from enhancements introduced by Orbis Partners in our earliest implementations in New York and Illinois. YASI is now used statewide in 10 jurisdictions and in numerous county and youth agencies across North America and in some international jurisdictions."

283.    According to Orbis Partners, Inc., " high risk youth need more services and the services must match their need profiles. ... YASI and the accompanying case planning

67

model (Collaborative Case Work™) were designed to meet these challenges.

284. According to Orbis Partners, Inc., "In adapting the Washington model for new jurisdictions, [the] goal was to focus on user application—building an assessment interface that helped users apply the result ... to link assessment results in an immediate way to the process of individualized case planning and appropriate service provision. ... through: A step by step model that incorporates the youth in the case planning process— Collaborative Case Work; Focus on reassessment for monitoring the progress of case planning and supervision objectives; Training that emphasizes case planning as the central objective of assessment. Case planning software that uses an attractive graphics interface and includes the capacity for more detailed case noting.

285. According to Orbis Partners, Inc., their "case planning approach outlines discrete steps practitioners can employ to help youth choose appropriate goals and action steps, while developing motivation to follow the plans." Contrasted "with a case planning approach that automatically selects interventions from a standard menu or relies only on attempts to enforce court conditions as the primary method for promoting positive behavioral change."

286. According to Orbis Partners, Inc., "The YASI assessment and case planning process is more individualized— matching supervision and intervention strategies with the youth's motivation level and other important individual responsivity factors."

287.   According to Orbis Partners, Inc., "The Collaborative Case Work model consists of the following three components: Mapping (assessment); Planning (mobilizing youth motivation); Reviewing (reassessment, reinforcing change, responding to relapse, managing the plan as it progresses)"

288.   According to Orbis Partners, Inc., The case planning model is integral to YASI. … assessment is only a first step. Without case planning, assessing risk, needs and strengths have little value on their own. The YASI assessment results drive the case plan. The key objective is to ensure that assessment helps produce good decision-making and the creation of individualized plans to reduce problem behavior.

289.   According to Orbis Partners, Inc., "Case planning begins with an analysis of the results of a YASI assessment. The results help identify the targets of service that are most likely to achieve positive change. Next, there is a focus on how to gain the youth's "buy-in" and develop realistic action steps that will achieve the desired results. As the plan is implemented, ongoing monitoring of the plan and provision of focused support become essential. All of the case planning steps are intimately linked to the YASI, from initial assessment to ongoing dynamic reassessment and documentation of outcomes.  All of the steps are built into [the] CaseWorks™ software platform used for assessment and case planning."

290.   According to Orbis Partners, Inc., YASI and Collaborative Case Work are driven by the principles of Risk, Need and Responsivity (RNR) …"  In addition, YASI draws heavily from Motivational Interviewing (MI).

291. According to Orbis Partners, the 10 YASI domains consist of: "Legal History, Family, School, Community/Peers, Alcohol/Drugs; Mental Health, Violence/Aggression; Attitudes; Adaptive Skills; Use of Free Time/Employment. ..." and "Some of the conventional risk and need domains have been re-conceptualized in the YASI (e.g., community/peers, aggression, adaptive skills), while newer research-based items have been introduced to supplement the case planning function."

292. Compulsory YASI testing is inappropriate for the Plaintiff ADP Class, should be stopped immediately and all psychological records obtained from ADP without HIPPA compliance destroyed and expunged by all Defendants

293. Administration of a self-report scale by Nassau County to an adolescent without informed consent of both the adolescent and their guardian is a violation of fundamental Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes.

294. Administration of a self-report scale by Nassau County to an adolescent without informed consent of both the adolescent and their guardian presumes guilt and operates to disseminate incriminating evidence to law enforcement.

295. Because the YASI scale has been used in over 70 juvenile justice agencies throughout the United States does not necessarily mean it was appropriately implemented.

296. Proper implementation of YASI testing in an RFPP requires at least a three hour assessment which includes at least a semi-structured interview, self-report measures,

and performance tests conducted by a staff who had been trained to reliability on all measures and procedures.

297. In Nassau County, YASI testing as an element of RFPP has exploited the notion of risk to legitimize intervention and interference in the lives of juvenile defendants prior to a plea of guilty or conviction after trial.

298. NASSAU COUNTY Defendants and the NASSAU COUNTY ADP, working in collaboration with MARY MCCORMICK, as C.E.O. of CENTER FOR COURT INNOVATION FUND FOR THE CITY OF NEW YORK and the CENTER FOR COURT INNOVATION is responsible for the following violations:

- HIPPA violations when the mental health/psychological examination information about her minor child was provided to, *inter alia*, the Nassau County District Attorney's Office;

- Denial of informed consent to enter ADP;

- Denial of informed consent to limited immunity;

- Denial of Federal Constitutional rights to remain silent;

- Denial of the right to the meaningful assistance of counsel;

- Denial of Federal Constitutional right to counsel;

- Denial of ordinary statutory and constitutional protections afforded to accused persons in Nassau County Courts.

### YASI EVALUATION CRITIQUE

299. In a paper entitled, "CA-YASI Construct Validity, To what extent do the domains measure the risk factors they're supposed to measure?" Jennifer Skeem, PhD, Patrick Kennedy, PhD, and Isaias Hernandez, MSW reported the

71

results of a court-mandated, independent evaluation of a study designed to determine whether the CA-YASI is a good tool for assessing risk and informing risk reduction efforts by assessing risk and informing risk reduction efforts.

300. According to the authors, the specific aims of the study were to examine the Department of Juvenile Justice (DJJ) staff were able to reliably score the CA-YASI; evaluate how well the CA-YASI assesses risk factors it purports to assess, and assess the utility of this tool in predicting future infractions and re-arrest.

301. In their first report, the authors found that only 60% of DJJ staff were able to score the CA-YASI with adequate reliability at the total score level.

302. In their cross-structure analysis,  the authors examined the relationships between  the CA-YASI domains and well-validated measures of constructs that theoretically  are strongly and/or not strongly related to those domains. For each of the domains, the authors assessed whether there is evidence of convergent validity (i.e., strong correlations with measures of theoretically similar constructs)  and discriminant validity (i.e., weak correlations with measures of theoretically dissimilar constructs).  For example, if the CA-YASI Attitude scale actually assesses procriminal attitudes, a youth's score on that scale will tell more about his or her level of criminal thinking than his level of intelligence.

303. Correlational analyses were conducted by the authors to compare the strength of association between each CA-YASI Domain and its convergent and discriminant criterion

measures.  Internal consistency and inter-rater reliability for the subset of reliable staff was also calculated for each domain.

304.    According to the authors, the results of the study represent a "best case scenario" for the construct validity of the CA-YASI because their study excluded the 40% of DJJ staff who could not reliably score the tool, and used simple scores that sum all items in each domain, rather than Orbis simple scores that sum all items in each domain, rather than Orbis-based scores that delete some items to maximize predictive utility sometimes at the expense of construct validity.

305.    According to the authors, even under these ideal conditions, there was very limited evidence that the CA-YASI domains considered most  relevant to evidence-based treatment for delinquent youth assess the risk factors they are meant to assess.  There was evidence that the domains that ostensibly tap robust individual criminogenic needs — Violence-Aggression,  Attitudes, and  Social Cognitive Skills — showed no specific associations with target constructs of anger/hostility, procriminal thinking, and executive function deficits.  There was a similar lack of support for domains that ostensibly tap important contextual risk factors like antisocial peer influence (Social Influences), family problems including abuse and poor monitoring (Family), and inadequate involvement in Education/Employment.

306.    The authors of the study did find that the scales with the strongest support, by far, were Legal History and Correctional Response which  generally distill past criminal behavior.

73

307.   Upon information and belief, "Legal History" and "Correctional Response" though known by other names in the New York Criminal justice system are the criteria which all arraignment judges whether in the Village and Town Courts, the County Court or the Supreme Court and the Assistant District Attorneys are supposed to rely upon when considering the amount of bail or whether the Defendant should be released in the custody of another or on their own recognizance.

308.   According to the authors, CA-YASI  Total scores were strongly associated with a well-validated measure of social deviance, "Factor 2" of the Psychopathy Checklist: Youth Version. This scale, like simpler measures of criminal history  simpler measures of criminal history, robustly predicts recidivism.

309.   The authors summarized the report of their study with the statement, "We found little evidence for the notion that the that the CA-YASI adds value to measures that simply characterize risk by assessing constructs that help *explain* [italics in original] the process that leads to recidivism.

310.   The authors concluded that "Because the CA-YASI cannot specify strong risk factors to target in treatment to reduce recidivism (with the possible exception of Substance Use), its utility as a risk reduction tool seems limited."

311.   Upon information and belief, DEFENDANTS, and all of them, knew of the limited utility of the YASI scale and that such measures should not be utilized in vulnerable youth nonetheless utilized to make determinations about the outcome of a criminal case based on such scales and devices.

74

## Nassau District Court Practice

312. Upon the affidavit of attorney Gregg Fishman duly sworn to on August 28, 2019 detailing his experiences with the Nassau County Adolescent Diversion Program (ADP) in the Nassau County District Court before a Nassau County District Court Judge, Plaintiffs allege that the following occurrences involving the adolescent son of Gregg Fishman are representative of practices affecting the individual members of the plaintiff class. See Exhibit "4" and "5".

313. Neither the adolescent defendant nor their Parent or parents was ever informed that they could "opt-out" of the Nassau County Adolescent Diversion Program (ADP).

314. That the Nassau County District Court Judge directed the parents of an adolescent defender to sign a form containing a condition that their child, an adolescent accused but unconvicted defendant, must appear in court when directed and report to Probation after every court appearance. See *id.*

315. That the Nassau County District Court Judge directed the parents of an adolescent defender to sign a form containing a condition that their child, an adolescent accused but unconvicted defendant, must report to Probation as directed.

316. That the Nassau County District Court Judge directed the parents of an adolescent defender to sign a form containing a condition that their child, an adolescent accused but unconvicted defendant, must maintain weekly telephone contact with a probation officer.

317. That the Nassau County District Court Judge directed the parents of an adolescent defender to sign a form containing

a condition that their child, an adolescent accused but unconvicted defendant, must cooperate with an Adolescent Diversion Program risk assessment.

318. That the Nassau County District Court Judge directed the parents of an adolescent defender to sign a form enrolling their child in the Nassau County Adolescent Diversion Program (ADP).

319. Gregg Fishman did refuse to sign but was directed to appear with his child in the basement of the Nassau County Hempstead District Court house for ADP screening.

320. That the Defendants, jointly and severally, individually and collectively, never provided the adolescent accused but unconvicted defendant or their parents with any information about the Adult Diversion Program before coercing the adolescent accused but unconvicted defendant and their parents into consenting to participate in the Nassau County Adolescent Diversion Program (ADP).

321. That the Defendants, jointly and severally, individually and collectively, never provided the adolescent accused but unconvicted defendant or their parents with any information about, or explanation of, the terms and conditions of the consent form sufficient to make an informed consent about whether to participate in the Nassau County Adolescent Diversion Program (ADP).

322. That the Defendants, jointly and severally, individually and collectively, never provided the adolescent accused but unconvicted defendant or their parents that they had an option to not sign the form.

323.    That the Defendants, jointly and severally, individually and collectively, never provided the adolescent accused but unconvicted defendant or their parents with sufficient time to read the form nor was it explained by or on behalf of any of the Defendants to the adolescent accused but unconvicted defendant or their parents.

324.    That the Defendants, jointly and severally, individually and collectively, threatened by implication that if the form was not signed there would be other serious consequences, which were never explicitly detailed, much less explained.

325.    That the Defendants, jointly and severally, individually and collectively, use the pressures of time and the fulness of the court's calendar to pressure and coerce an adolescent accused but unconvicted defendant and their parents into agreeing to participate in the Nassau County Adolescent Diversion Program (ADP) without the opportunity for informed consent.

326.    That the Defendants, jointly and severally, individually and collectively, never obtained a HIPPA release from the adolescent accused but unconvicted defendant and their parents for the psychological examination, upon information and belief, is an integral part of the Nassau County Adolescent Diversion Program (ADP).

327.    That neither an adolescent accused but unconvicted defendant nor their parents are ever offered a choice of whether to enroll in the Nassau County Adolescent Diversion Program (ADP) yet, rather, the process is coercive and irrespective of a screening the youth must appear in the ADP.

328.    Even if one attempts to opt-out of the ADP program, one is ordered to appear in the ADP part.

329.    Once in the ADP, and Defendants collectively understand this to be procedure in ADP, the accused youth does not have the benefit and protection of the statutory and constitutional rights afforded to other accused persons within the criminal justice system.

### THE PLAINTIFFS' CLAIMS UNDER THE PLAINTIFF ADP CLASS

## Actionable events

330.    The claims of the Representative Plaintiffs and members of the Class arise from the procedures and practices complained of herein.

331.    Defendants, jointly and severally, individually and collectively, have endorsed this policy that disenfranchises youth, perhaps with their best interests in mind, in favor of this program.

### HIPPA VIOLATIONS

332.    The Privacy Health Insurance Portability and Accountability Act of 1996 (HIPAA) is based upon a legislative intent to require patient consent for use and disclosure of protected health.

333.    Where HIPPA requires an "authorization," voluntary consent is not sufficient to permit a use or disclosure of protected health information unless it also satisfies the requirements of a valid authorization.

334.    A proper authorization under HIPPA is a detailed document that gives permission to use protected health

78

information for specified purposes, specified by the individual.

335. HIPPA authorization is required for administration and use of information obtained from invasive psychological testing such as YASI.

336. YASI is a self-report scale and, further, its use by PROBATION DEFENDANTS raises issues of accuracy and the qualifications of law enforcement officers to utilize a self-report instrument to obtain information used in a criminal proceeding.

337. An authorization satisfying HIPPA must specify a number of elements, including a description of the protected health information to be used and disclosed, the person authorized to make the use or disclosure, the person to whom the covered entity may make the disclosure, an expiration date, and, in some cases, the purpose for which the information may be used or disclosed.

338. Defendants, jointly and severally, individually and collectively routinely fail to obtain authorization from Plaintiffs and members of the Plaintiff Class prior to administration of invasive psychological tests as elements of the Nassau County Adolescent Diversion Program (ADP).

339. The rights of Plaintiff J.S., and all other similarly situated persons, under HIPPA were violated when Nassau County Probation Department performed mental health/ psychological examinations upon those referred without consent and disseminated that information to, among others, the Nassau County District Attorney and other employees of Nassau County and the State of New York.

79

# THE CONSTITUTIONAL ISSUES

## FIFTH AMENDMENT: *MIRANDA* CONSIDERATIONS

340.  Plaintiff J.S. was questioned outside the presence of her mother and without being given notice of her Miranda rights.

341.  Plaintiff J.S. was arraigned and summarily transferred to the Adult Diversion Part ("ADP") of Nassau County without being informed of what the Adult Diversion Part ("ADP") of Nassau County was or her right to speak to counsel prior to submitting to invasive psychological testing or speaking to and being interrogated by law enforcement agents.

342.  Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants must divulge information and must speak beyond simply pedigree information

343.  Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants must speak about events and can be expected to make inculpatory statements.

344.  Under the procedures and practices complained of herein, statements made by accused but unconvicted adolescent defendants without benefit and advice of counsel and informed consent can be utilized by law enforcements for other crimes.

345.  Under the procedures and practices complained of herein, as to accused but unconvicted adolescent defendants, the basic principle of the American criminal justice system,

the presumption of innocence, is displaced by this state sponsored program.

346. Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants waive fundamental constitutional rights without sufficient knowledge or understanding of the gravity and import of such waiver which can neither be knowing and voluntarily without such knowledge and understanding.

347. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied their Fifth Amendment right to remain silent, individually and on behalf of her child and the class of children subjected to questioning.

### THE SIXTH AMENDMENT: "RIGHT TO COUNSEL"

348. Plaintiff J.S. was questioned outside the presence of her mother and without being given notice of her Miranda rights.

349. The Sixth Amendment rights of Plaintiff J.S. and all other similarly situated persons, were violated when Nassau County Probation Department conducted questioning outside the presence of counsel.

350. Plaintiff J.S. was arraigned and summarily transferred to the Adult Diversion Part ("ADP") of Nassau County without being informed of what the Adult Diversion Part ("ADP") of Nassau County was or her right to speak to counsel prior to submitting to invasive psychological testing or speaking to and being interrogated by law enforcement agents.

351.     Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied her Sixth Amendment rights to seek counsel, and be represented by counsel during all processes and proceedings including the questioning of her minor child.

352.     Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants are denied the opportunity to speak with an attorney prior to, during or after the YASI scale is administered.

353.     Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants, invasive psychological testing and interrogation occurs outside the presence of counsel and by law enforcement agents.

### THE FIFTH AMENDMENT: "EQUAL PROTECTION"

354. Plaintiff J.S. and all other similarly situated persons, who were summarily transferred to the Nassau County Adolescent Diversion Program (ADP) were denied rights and protections afforded to other accused persons in Nassau County in violation of longstanding Supreme Court Jurisprudence.

### THE FIFTH AMENDMENT: "DUE PROCESS"

355.     The Fifth Amendment rights of Plaintiff J.S. and all other similarly situated persons, were violated when she was forced to divulge information beyond pedigree information to the Nassau County Probation Department, see *In re Gault*, 387 U.S. 1 (1967).

356.     The due process rights of Plaintiff J.S. and all other similarly situated persons, were violated when such

82

persons were summarily transferred to the Adolescent Diversion Part, Nassau County Probation Department.

357. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was deprived of due process when her minor child was arraigned and she was instructed, without advice of counsel or information about her right to counsel, to sign a form entering her child into ADP and subjecting the children to, inter alia, psychological testing.

358. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when instructed to enroll her minor child into the Nassau County Adolescent Diversion Program (ADP) without sufficient information to provide informed consent;

359. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when instructed to take her minor child from a Courtroom directly to the Nassau County Probation Department.

360. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when not afforded a bail hearing to provide her child with the opportunity to be released from custody on reasonable bail, in the custody of her parent(s), or on her own recognizance.

361. Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, were denied due process when her minor child was arraigned without a

preliminary determination that the accusatory instrument was legally sufficient.

362.  Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when her minor child was subjected to psychological testing without being informed of their rights under HIPPA;

363.  Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied due process when her minor child were subjected to ADP, a part that does not allow for the ordinary protections afforded to accused persons in Nassau County.

364.  Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was a victim of HIPPA violations when the mental health/psychological examination information about her minor child was provided to, inter alia, the Nassau County District Attorney's Office;

365.  Plaintiff Linda Snyder, individually and as representative of all other similarly situated persons, was denied their Fifth Amendment right to remain silent, individually and on behalf of her child and the class of children subjected to questioning.

366.  Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants are diverted to a  Court facility not presided over by a Judge and in which all matters and procedures are controlled by the Office of the Nassau County District Attorney.

367.  Under the procedures and practices complained of herein, as t to accused but unconvicted adolescent defendants, the

basic principle of the American criminal justice system, the presumption of innocence, is displaced by this state sponsored program.

### THE FOURTH AMENDMENT: SEIZURE

368.   Plaintiff J.S. was seized in her home without a warrant;

369.   Plaintiff J.S. was forcibly removed from her bedroom at 2:00 AM and arrested without arguable probable cause/ probable cause

370.   Plaintiff J.S. had her property and/or her mother's property seized and her most personal photographs, communications, images and papers searched in violation of the Fourth Amendment and the clear direction of the Supreme Court of the United States in *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473; 189 L.Ed. 2d 430.

371.   Plaintiff Linda Snyder was approached at her home in the middle of the night by the Nassau County Police Department ("NCPD") who forcibly entered her home without a warrant.

372.   Plaintiff Linda Snyder was subjected to unwarranted police invasion that led to a NCPD officer entering the bedroom of her minor child, J.S., seizing J.S. and seizing the cellular phone afforded by Linda Snyder to her child, J.S.

373.   Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants are subjected to incarceration/seizure without due process.

374.   Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants suffer post arrest seizures for every day of school missed.

375. Under the procedures and practices complained of herein, accused but unconvicted adolescent defendants suffer post arrest seizure for every drug test/psychological examination.

## THE FOURTH AMENDMENT: RIGHT TO COUNSEL

376. Plaintiff J.S. was arraigned and summarily transferred to the Adult Diversion Part ("ADP") of Nassau County without being informed of what the Adult Diversion Part ("ADP") of Nassau County was or her right to speak to counsel prior to submitting to invasive psychological testing or speaking to and being interrogated by law enforcement agents.

377. The Fourth Amendment rights of Plaintiff J.S., and all other similarly situated persons, were violated when she was forced to appear in the Adolescent Diversion Part, Nassau County Probation Department prior to conviction, a plea of guilty, or informed consent to the transfer.

## THE FOURTH AMENDMENT: INFORMED CONSENT

378. The rights of Plaintiff J.S., and all other similarly situated persons, were violated when they were not afforded sufficient information to provide informed consent.

## THE FIFTH AMENDMENT: INFORMED CONSENT

379. The rights of Plaintiff J.S., and all other similarly situated persons, were violated when they were not afforded sufficient information to provide informed consent.

## DECLARATORY CLAIMS

380.   Defendants, jointly and severally, individually and collectively, act as parens patriae to every 16 and 17-year old adolescent charged with a non-violent crime and as such have a non-delegable duty and obligation to protect the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes, the members of Plaintiff Class.

381.   The United States of America is the ultimate parens patriae of all those 16 and 17-year-old adolescent minors charged with non-violent crimes, the members of Plaintiff Class.

382.   Defendants, jointly and severally, individually and collectively have created an imminent danger of serious, permanent, and irreparable damage to the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes.

383.   That the Defendants, jointly and severally, individually and collectively individually and/or collectively, jointly and/or severally, are under a continuing obligation to protect, sustain and support the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes.

384.   That the Defendants, jointly and severally, individually and collectively have relied upon contractors, vendors, and/or consultants in order to cover the insufficient numbers of government staff and the inadequacy of government agency management, and the lack of effective policies and procedures in order to effectively protect the

87

Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes.

385.   That Defendants, jointly and severally, individually and collectively, made deliberate decisions which were arbitrary, capricious, in excess of statutory jurisdiction, authority, or limitations, short of statutory right, and without observance of procedure required by law, to the extent that such decisions and administrative determinations failed to respect and actually violated the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes.

386.   That Defendants, jointly and severally, individually and collectively, continue to maintain and proclaim through every available means of advertising and public relations that the Nassau County Adolescent Diversion Program (ADP) operates in the best interests of the Plaintiff class.

387.   That Defendants, jointly and severally, individually and collectively, maintain psychological data on vulnerable, minor, children without HIPPA consent or any authorization for use by the Nassau County District Attorney and County of Nassau.

PLAINTIFF CLASS OF PERSONS SUBJECT TO CONVERSION,
THEFT AND/OR TAKINGS OF ELECTRONIC DEVICES
WITHOUT DUE PROCESS OR RENUMERATION

## Actionable events

388.    The claims of the Representative Plaintiffs and members of the Class arise from the procedures and practices complained of herein.

### DECLARATORY CLAIMS

389.    That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE do regularly seize electronic devices without a warrant or legal basis therefore.

390.    That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE continue to possess these devices during the pendency of a criminal matter irrespective of authority to do so.

391.    That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE do regularly seize and maintain electronic/cellular phone devices for

which these Defendants never return to their rightful owner.

392. That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE do seize, maintain and obtain information from electronic/cellular phone devices seized from individuals, like J.S., Linda Snyder and all others similarly situated and use of force/threat of use of force.

393. That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE refuse to return electronic/cellular phone devices after the resolve of a criminal case.

394. That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE regularly engage in the conversion of electronic/cellular phone devices from persons within the County of Nassau.

395. That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE engage in a pattern of taking and conversion of electronic/cellular phones which is common to all those whose devices are

90

seized and common to all those who attempt to obtain the return of such device yet are denied.

396. That Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE provide no procedural remedy as to the seizure of the electronic device/cellular phone.

397. As such, Defendants, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY, HEMPSTEAD VILLAGE, HEMPSTEAD VILLAGE POLICE DEPARTMENT and by and through the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE violate the rights of Linda Snyder and all those similarly situated who have had their electronic devices/cellular phones taken by these Defendants and for which Defendants refuse to return such device.

### INDIVIDUAL CLAIMS BROUGHT ON BEHALF OF THE INDIVIDUAL PLAINTIFFS AND NOT CLASS CLAIMS

### FIRST COUNT: 42 U.S.C. § 1983; False arrest/false imprisonment

398. Plaintiff repeats and re-alleges each and every allegation contained in the aforementioned paragraphs of this *Complaint* with the same force and effect as though fully set forth herein.

399. The accusations of wrongful actions leveled against Plaintiff J.S. were false.

400.    The detainment and physical restraint of J.S. without probable cause or legitimate reason therefore, and other wrongful acts conducted against Plaintiffs by Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 constituted a violation of Plaintiff's rights, secured by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches and seizures.

401.    The aforementioned actions were negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject Plaintiffs to abuse of process, false imprisonment and summary punishment and forfeiture, but failed to prevent same and breached their duty. Further, Defendants had a duty to refrain from summary punishment of the Plaintiffs on the basis of age and to intervene should the such violation(s) occur.

402.    As a consequence of Defendants' wrongful, inappropriate and/or illegal actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiffs were deprived of their freedom, was made to suffer emotion injuries, damage to their reputations, loss of employment, great pain and suffering, and were subjected to great fear, emotional scarring and terror and personal humiliation

92

and degradation, and continued to suffer mental and emotional distress as a result of the aforesaid unlawful conduct of the aforementioned Defendants.

403. That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### SECOND COUNT: 42 U.S.C. § 1983 AND NEW YORK LAW; Abuse of process

404. Plaintiffs repeat and re-allege each and every allegation contained in this *Complaint* with the same force and effect as though fully set forth herein.

405. Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiff of rights, privileges and immunities secured by the United States Constitution, including, but not limited to, rights secured by the Fourth, Fifth, Sixth, Ninth, Fourteenth Amendments  and other laws  in violation of 42 U.S.C. § 1983, constituting a conspiracy.

93

406.   Abuse of process is evidenced by Defendants refusal, delay, or intentional, deliberate and/or negligent prolonged detention and investigation of the incident surrounding the arrest, seizure, taking, summary punishment and prosecution of the Plaintiff J.S. initiation of criminal process, prosecution of J.S. and continued prosecution of Plaintiff J.S. when Defendants knew and had reason to know that there was no probable cause or arguable probable cause to do so.

407.   The above is coupled with Defendants NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 domestic characterization of the physical contact between Defendant Brandon Chambers and Plaintiff J.S., sixteen while Brandon Chambers was 21 years old, rather than a felonious relationship to which these law enforcement agents should have acted to protect J.S.

408.   Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD

94

POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 did force Plaintiffs to suffer Fourth Amendment Violations, summary pain and punishment insofar as Plaintiffs suffered a false arrest, abuse of process(es), theft of property and summary punishment and then were deprived of their 5th Amendment Rights (including but not limited to the right to the assistance of counsel, the right to remain silent and the right against forced self-incrimination) and then subsequently arrested, processed, punished and criminally charged with false crimes by Defendants.

409.     Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 had a duty to conduct a prompt, full and fair investigation of the incident surrounding Plaintiff J.S.' arrest.

410.     A lawful criminal process was perverted by Defendants and specifically Defendants NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION

95

DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 in failing to investigate this matter and failing to present this matter to the Office of Civil Rights, the United States Attorney's office, the NASSAU COUNTY District Attorney's Office, and/or the Grand Jury for indictment of Brandon Chambers

411.   Such actions were done in a manner evidencing malice, gross recklessness, intentional and/or indifference without excuse or justification in violation of 42 U.S.C. § 1983.

412.   As a direct and proximate result Plaintiffs suffered emotional damage and/or distress, including but not limited to prolonged stress and anxiety, fear, humiliation, and frustration.

413.   That by reason of the foregoing, Plaintiff suffers and continues to suffer irreparable injury and monetary damages, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### THIRD COUNT: 42 U.S.C. §§ 1985 AND 1986; Conspiracy to commit civil rights violations and failure to intervene

414.   Plaintiffs repeat and re-allege each and every allegation contained in this *Complaint* with the same force and effect as though fully set forth herein.

415.   Defendants, collectively, and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE

96

DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 did intend and conspire to deprive Plaintiffs of their 4th, 5th, 6th, 9th and 14th Amendment rights, and jointly caused such deprivation of rights by acting in concert to unlawfully detain, falsely imprison, employ force, steal property, retain property, convert Plaintiffs' electronic device, deprive Plaintiffs of property and subject Plaintiffs to emotional pain and injury.

416.  Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 did intend and conspire to deprive persons of their 4th, 5th, 6th, 9th, and 14th Amendment rights, by acting in concert to unlawfully detain, falsely imprison, deprive of liberty, deprive of property, deprivation of due process and subject individuals such as the Plaintiffs to summary punishment in a pattern, practice, widespread custom or policy of employing false

97

process, false arrests, abuse of process and obtaining property to which Defendants knows it no theirs.

417.     Further, Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 did intend and conspire to deprive Plaintiffs of their 4th, 5th, 6th, 9th and 14th Amendment rights, and jointly caused such deprivation of rights by acting in concert to summarily punish Plaintiffs while not reporting, punishing and/or prosecuting the aforementioned violations visited upon the Plaintiffs by the aforementioned Defendants and further indifference when Plaintiffs collectively and individually demanded that charges be brought against the person(s) responsible for the harm done to Plaintiffs.

418.     Defendants NASSAU COUNTY POLICE DEPARTMENT PROBATION DEPARTMENT, VILLAGE OF HEMPSTEAD POLICE DEPARTMENT did fail to train its agents, employees and assigns including but not limited to NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD

POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 in reporting, intervening, punishing and/or prosecuting the aforementioned violations visited upon Plaintiffs by the aforementioned Defendants and other persons who report violations of constitutional rights, harassment, abuse of process, theft of property, due process violations, conversion, unlawful force and other violations of law.

419.    Additionally, Defendants NASSAU COUNTY, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS (# 8774), NASSAU COUNTY POLICE DETECTIVE SGT. SCALONE, , NASSAU COUNTY POLICE OFFICERS JOHN AND JANE DOE # 1-10 engaged in a pattern, practice, widespread custom, usage and/or policy of charging and prosecuting persons who make complaints, racial minorities who protest their innocence, falsely detained and/or falsely arrested persons and others who suffer physical abuse at the hands of Defendants (collectively and individually), who are subject to police illegalities and/or failing to intervene, remediate and/or appropriately respond to allegations of abuse by Defendants  NASSAU COUNTY, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS (# 8774), NASSAU COUNTY POLICE DETECTIVE SGT. SCALONE, , NASSAU COUNTY POLICE OFFICERS JOHN AND JANE DOE # 1-10.

420.    Defendants NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE

99

DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 engaged in a pattern, practice, widespread custom, usage and/or policy of charging and prosecuting persons who make complaints, persons who protest their innocence, falsely detained and/or falsely arrested persons and others who suffer physical abuse at the hands of Defendants (collectively and individually), who are subject to police illegalities and/or failing to intervene, remediate and/or appropriately respond to allegations of abuse by Defendants to which the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE knew or had reason to know of yet cooperated in such wrongdoings by prosecuting and continuing to prosecute, *inter alia*, Plaintiffs.

421. The actions by Defendants denied Plaintiffs their constitutional rights, including but not limited to due process under the law. All of these rights are guaranteed to the Plaintiffs under U.S.C. §§ 1983, 1985, 1986 and the 4th, 5th, 6th, 9th and 14th Amendments to the United States Constitution.

422. As a consequence of Defendants' wrongful actions, intentional, negligent, and reckless behavior, and violations of state and federal laws, Plaintiffs were deprived of their freedom, loss of good name, reputation, the ability to earn an income, deprived of property and was

100

subjected to great fear, terror, personal humiliation and degradation.

423. Plaintiffs suffered and continued to suffer pain and impairment, mental and emotional distress, as a result of the aforesaid unlawful conduct of Defendants.

424. That by reason of the foregoing, Plaintiffs suffered and continue to suffer irreparable injury and monetary damages as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

### FOURTH COUNT: STATE AND FEDERAL LAW; Malicious Prosecution

425. Plaintiffs repeat and re-allege each and every allegation contained in the *Complaint* with the same force and effect as though fully set forth herein.

426. The Collective Defendants, Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 lacked reasonable suspicion to stop and detain Plaintiff J.S. and further lacked any probable cause to arrest Plaintiff J.S., enter Plaintiffs' home; retain Plaintiff J.S.; and/or cause Plaintiffs to be detained and prosecuted.

427.   The Collective Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10  lacked arguable probable cause to arrest Plaintiffs; retain Plaintiffs; and/or cause Plaintiffs to be detained and prosecuted.

428.   Further, if probable or arguable probable cause existed to arrest and/or prosecute the Plaintiffs, Defendants knew or had reason to know that said probable or arguable probable cause to arrest Plaintiffs; retain Plaintiffs; and/or cause Plaintiffs to be detained and prosecuted dissipated and, therefore, was illegal and in contravention to Plaintiffs' constitutional rights.

429.   Without such probable cause, Defendants wrongfully used physical force to arrest and detain the Plaintiff J.S. and/or caused Plaintiffs to be detained through the use of physical force.

430.   Plaintiff J.S. was physically prevented from leaving the custody of Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD

POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10  and was kept there under the supervision and knowledge of the Defendants without access to her freedom, family, dignity, or home.

431. This detainment of Plaintiffs violated the Plaintiffs' due process rights to be free from illegal arrest, illegal confinement and/or illegal seizure.

432. Such detainment not only prevented Plaintiffs to be free from unconstitutional restraint of both body and mind but it also deprived Plaintiffs of property, a cellular phone, which has not been returned as of today.

433. The subsequent malicious prosecution of Plaintiffs following their wrongful arrest, which was conducted by Defendants with knowledge that Plaintiffs was wrongfully targeted, their constitutional right to be free from unlawful search and seizure violation, falsely detained, assaulted, battered and wrongfully arrested, was committed by Collective Defendants under color of law, customs, usages and/or statutes of the State of New York.

434. Under color of law, Defendants and specifically Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF

103

HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 deprived Plaintiffs of their rights to protection from unlawful search and seizure by falsely charging Plaintiff J.S. criminally and prosecuting J.S. pursuant to said criminal statutes, for which there was no evidence or substantiation of any kind to support the allegations.

435. The continued prosecution of J.S. is due, in part, to the Collective Defendants' failures to apprehend Defendant Brandon Chambers, someone who may have gang affiliation/a relationship with the police, who targeted J.S. and did engage in a physical relationship albeit she was sixteen years old and he was twenty one years old at the time.

436. Defendants knew and had reason to know prior to the warrantless arrest of J.S. at 2:00 AM while she was sleeping in her home that Brandon Chambers had multiple open criminal cases with the County of Nassau and that Brandon Chambers engaged in a sexual relationship with a sixteen year old when he was 21 years old.

437. The Defendants acted under color of law to deny Plaintiffs their constitutional rights to due process and freedom from seizure, by wrongfully detaining Plaintiff J.S. under threat of imprisonment, without providing any reasonable basis and/or investigation warranting prosecution, or other due process guarantees secured to the Plaintiffs.

438. Defendants collectively and individually initiated the prosecution of Plaintiff J.S. and/or caused the initiation of Plaintiff prosecution based upon their affirmative bad-faith actions outlined above. Collective Defendants then caused

104

the malicious prosecution of Plaintiff J.S. to continue long after their arrest - due to their ongoing and collective malicious actions.

439. As discussed above, the criminal prosecution of Plaintiff J.S. was terminated in Plaintiffs' favor – the prosecutor dismissing this case after ninety days of answering ready because of a false arrest and malicious prosecution.

440. Throughout the criminal proceeding, the Nassau County District Attorney's Office refused to provide discovery.

441. Throughout the criminal proceeding, the Nassau County District Attorney's Office refused to produced Brandon Chambers for trial – Mr. Chambers being in the custody of the County of Nassau for other charges being prosecuted by the County of Nassau.

442. Indeed, Nassau County District Attorney's Office, through its agent attorneys, acknowledge that there was a statutory rape which Plaintiff Linda Snyder tried to report on several occasions yet was denied every time.

443. Ms. Linda Snyder did try to report the statutory rape and prosecute the statutory rape of her minor child, J.S., but was refused by the County of Nassau.

444. Ms. Linda Snyder did try to report the statutory rape and prosecute the statutory rape of her minor child, J.S., but was refused by the Third Precinct, Nassau County Police Department.

445. Ms. Linda Snyder did try to report the statutory rape and prosecute the statutory rape of her minor child, J.S., but was refused by the Nassau County District Attorney's Office and its various agents.

105

446.    To be clear, Linda Snyder was encouraged to submit a complaint to the prosecutor's office but that was just a ruse.

447.    As a consequence of Collective Defendants' wrongful actions, negligent behavior, and violation of state laws, Plaintiffs were deprived of their freedom, was made to suffer physical and emotional injuries, was caused to suffer special damages including but not limited to legal fees, loss of license/employment and medical costs; were subjected to great fear, terror, personal humiliation and degradation.

448.    As a direct and proximate result of the aforesaid acts by Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10  Plaintiff J.S. was falsely and maliciously prosecuted by Defendants. Consequently, Plaintiffs are entitled to compensatory damages, miscellaneous court costs, and other awards as seen fit as well as punitive damages, costs and attorney fees, and any other relief this Court may find just and proper.

## PENDENT JURISDICTION

### FIFTH COUNT: NEGLIGENCE

106

449.  Plaintiffs repeat and re-allege each and every allegation contained in this *Complaint* with the same force and effect as though fully set forth herein.

450.  Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10  acted negligently in that they had a duty to act reasonably and responsibly and not to act in a manner that would cause injury and/or harm or the threat of harm to the Plaintiff J.S., a minor, and Plaintiff Linda Snyder, her mother.

451.  Defendants had a duty not to subject Plaintiff J.S. to false arrest, malicious prosecution, conversion, false and improper investigation, constitutional violations, false imprisonment, wrongful institutionalization, forcible examination, compulsory self-incrimination, summary punishment, charges, battery, forced detention, denial of right to move freely as she wished, hospitalization, and summary punishment or otherwise abuse Plaintiffs. Defendants, in their actions, breached those duties.

452.  Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU

107

COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10   violated the Plaintiff's rights secured under the United States Constitution, New York State Constitution and 42 U.S.C. § 1983, and were careless, negligent and reckless in the care and treatment of Plaintiffs by failing to train, supervise, discipline, and investigate the Defendant Police Officers involved in the instant matter..

453. Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10   knew or should have known of Defendant Police Officers and/or Defendant employees' propensities for the conduct which caused substantial and severe injury to the Plaintiffs.

454. In the acts complained of herein, each of the Defendants acted negligently in that they had a duty to properly investigate, act within the scope of their authority, and not to falsely detain, falsely accuse, charge, prosecute, steal from, convert property and harm Plaintiffs, use illegal detention, abuse of process, falsely accuse, exploit, slander, defame and/or administer psychological examination

108

without consent, release or meaningful representation or otherwise violate the Constitutional and civil rights of the Plaintiffs, and in that they breached said duty.

455. That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### SIXTH COUNT: ASSAULT & BATTERY

456. Plaintiffs repeat and re-allege each and every allegation contained in this *Complaint* with the same force and effect as though fully set forth herein.

457. Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10   having illegally and unlawfully detained Plaintiffs battered, restrained and ignored the felonious relationship where J.S. was the victim and instead continued to violate the rights of both Plaintiffs as well as the laws of the State of New York.

458. Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE

DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 wrongfully, unlawfully and without privilege, consent, emergency, necessity, or justification, forced Plaintiffs to suffer imprisonment, detention and restricted Plaintiffs' ability to move freely.

459. Plaintiffs at no time consented to such abuse or seizure of his person by Defendants. Said actions were intentional and aimed at injuring and causing Plaintiffs harm discomfort, pain and humiliation.

460. Upon information and belief, Plaintiff J.S. was battered, hurt, handled, forcibly restrained and confined by Defendants.

461. Defendants did restrain, use force and abuse Plaintiffs by placing them in fear of imminent danger and/or bodily harm, and subjected both Plaintiffs to pain and emotional injury by virtue of Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10 use of restraint and coercion in their apprehension of false arrest of Plaintiff J.S.

110

462.   In the acts complained of herein, each of the Defendants acted negligently in that they had a duty to properly investigate, act within the scope of their authority, and not falsely arrest, defame, initiate false criminal process or otherwise violate the Constitutional and civil rights of Plaintiffs and in that they breached said duty.

463.   That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### SEVENTH COUNT: Intentional infliction of emotional distress

464.   Plaintiffs repeats and re-alleges each and every allegation contained in the *Complaint* with the same force and effect as though fully set forth herein.

465.   The Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE # 1 – 10  through their conduct, acts, and omissions acted outrageously and beyond the bounds of decency for their respective roles in (a) wrongfully restraining, confining, victimizing a 17 year old victim of statutory rape, taking her phone and exposing the intricacies of her life, and coercing Plaintiffs causing them

111

great distress and emotional agony; (b) falsely arresting, detaining and then filing false charges against Plaintiff J.S.; (c) representing that it would prosecute Brandon Chambers for statutory rape, repeatedly telling Plaintiffs to come to the precinct only to continue to represent that Defendants were unable to do anything and (d) concealing, covering up, conversion of the cellular phone, summarily punishing and filing criminal charges, and failing to redress the wrongs done to Plaintiffs. As a result, Plaintiffs suffered great pain, emotional degradation, loss of employment, shame, humiliation and anguish.

466. The Defendants committed the above stated reprehensible, extreme and outrageous conduct against Plaintiffs with intent and full knowledge that their conduct would cause severe and extreme emotional and psychological harm to Plaintiffs with such extreme emotional harm being intended.

467. The Defendants knew or had reason to know that the false charges, false allegations, false imprisonment, false accusation of threat, force and employment of false criminal process against Plaintiffs would result in such harm.

468. The Defendants knew and had reason to know that telling Plaintiffs that their cellular phone would be returned when it would not make Plaintiffs endure several successive visits and phone calls to the NASSAU DEFENDANTS without success.

469. The Defendants knew and had reason to know that telling Plaintiffs that Brandon Chambers would be prosecuted for statutory rape when he would not cause harm, which it did, to both J.S. and Linda Snyder.

470. The Defendants knew and had reason to know that telling Plaintiffs that in this "Me Too" era of prosecuting high profile persons that to *not* charge Brandon Chambers with a crime when he was already the subject of many other prosecutions would cause insult, injury and feelings to both Plaintiffs of lessened self-worth.

471. Defendants did fail to investigate, charge or report such employment of false imprisonment, conversion, abuse of process, improper use of criminal process to the appropriate authorities but, rather, Defendants began to conspire and cover up such transgressions by summarily punishing, arresting, filing criminal charges and informing

113

Plaintiffs, that no due process would issue but rather that Plaintiffs would be treated as if they were criminals, divested of their property, detained, falsely arrested, falsely investigated, falsely prosecuted and J.S. released without any finding of guilt and no acknowledgement or apology issued for such wrongdoing.

472. Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case, in that the Plaintiffs suffered and continue to suffer from emotional exhaustion, physical manifestation of symptoms of anxiety, night terrors, sleep disturbances and grief.

473. That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

### EIGHTH COUNT: Negligent infliction of emotional distress pendent jurisdiction

474. Plaintiffs repeat and re-allege each and every allegation contained in the *Complaint* with the same force and effect as though fully set forth herein.

475. The Defendants Brandon Chambers, NASSAU COUNTY POLICE DETECTIVE DAMIEN SAUREZ # 8794, NASSAU COUNTY POLICE DETECTIVE BRENDAN C GIBBS # 8774, NASSAU COUNTY POLICE DEPARTMENT John and Jane Does # 1- 10 NASSAU COUNTY PROBATION DEPARTMENT John and Jane Does # 1- 10, VILLAGE OF HEMPSTEAD POLICE OFFICER (FIRST NAME UNKNOWN) ROTH #1252 and VILLAGE OF HEMPSTEAD POLICE OFFICERS JOHN

114

AND JANE DOE # 1 – 10  through their conduct, acts, and omissions acted outrageously and beyond the bounds of decency for their respective roles in (a) wrongfully detaining, depriving of property, targeting, confining Plaintiffs/Plaintiff J.S. to cause them great physical agony; (b) concealing, covering up, and failing to redress the wrongs done to Plaintiffs; and (c) falsely arresting and maliciously prosecuting Plaintiff J.S. As a result, Plaintiffs suffered great pain, shame, humiliation and anguish.

476.   The Defendants committed the above stated reprehensible, extreme and outrageous conduct against Plaintiffs knowing or having reason to know that their conduct would cause severe and extreme emotional and physical harm to Plaintiffs with such extreme emotional harm being the natural and logical consequence of their actions.

477.   The Defendants knew or had reason to know that Plaintiff J.S. was guilty of no wrongdoing.

478.   The Defendants knew or had reason to know that Plaintiff J.S. was the victim of a statutory rape.

479.   The Defendants knew or had reason to know that Plaintiffs wished to prosecuted Defendant Brandon Chambers for the illegal physical relationship he had with J.S., 16 years old at the time, as Mr. Chambers is 5 years old than J.S.

480.   Defendants, individually and collectively, acted knowing or having reason to know in a foreseeable manner that their conduct would cause severe and extreme emotional and physical harm to Plaintiffs, while falsely accusing Plaintiff J.S. of threatening Brandon Chambers when, in reality, she simply wished to get away from Brandon Chambers. Defendants acted to caused Plaintiffs' extreme emotional harm.

481.   Said extreme emotional harm, with psychological and physical symptoms manifesting therefrom, did in fact occur in this case, in that the Plaintiffs suffer and continues to suffer from emotional exhaustion, physical manifestation of symptoms of anxiety, night terrors, sleep disturbances and grief.

482.   Plaintiff J.S. further suffers the emotional and physical distress of intense stress, anguish, and psychological trauma, knowing that she was debilitated, humiliated, and caused to suffer fear of reprieve by Brandon Chambers.

483.   Plaintiffs suffer an emotional toll, best captured by the recent "Me Too" movement where Plaintiffs cannot an order of protection or prosecute this convicted felon, Brand Chambers, who engaged in a felonious act(s) with J.S.

484.   Plaintiff J.S. further suffers the emotional and physical distress of intense stress, anguish, and psychological trauma, knowing that she was falsely arrested and divested of his phone for the purpose of instilling fear and preventing her from calling her mother to tell her that she was under arrest that evening.

485.   That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## DAMAGES

486.   As a result of the actions of the Defendants, jointly and severally, individually and collectively the Representative Plaintiffs have suffered and will continue to suffer serious, permanent, and irreparable damage.

116

487.    As a result of the willful, intentional, and flagrant disregard of the rights of the Representative Plaintiffs and members of the Plaintiff ADP Class by the Defendants, individually and/or collectively, jointly and/or severally, the Representative Plaintiffs and members of the Class have suffered and will continue to suffer violations of HIPPA and the protections guaranteed thereunder for which such records must be returned to Plaintiffs if not destroyed.

488.    As a result of the failure of the Defendants, individually and/or collectively, jointly and/or severally, to implement the appropriate changes to ensure the protection of rights to the Plaintiff ADP Class, Representative Plaintiffs and members of the Class have suffered and will continue to suffer damages, including actual damages pecuniary losses, anxiety, and emotional distress.

489.    As a result of the willful, intentional, and flagrant disregard of the rights of the Representative Plaintiffs  and members of the Class by the Defendants, individually and/or collectively, jointly and/or severally, and as a result of the failure of the Defendants, individually and/or collectively, jointly and/or severally, to recognize and respect, much less protect the civil, constitutional, and human rights of the Plaintiff ADP Class, Plaintiffs  and members of the Class have suffered or are at increased risk of serious, permanent, and irreparable damage.

490.    As a result of the willful, intentional, and flagrant disregard of the rights of the Representative Plaintiffs and Plaintiff ADP Class by the Defendants, individually and/or collectively, jointly and/or severally, and as a result of the failure of the Defendants, individually and/or collectively, jointly and/or severally, to recognize and respect, much less protect the civil, constitutional, and human rights of the

Plaintiffs, the Representative Plaintiffs and members of the Class have suffered or are at increased risk of suffering serious, permanent, and irreparable damage as such Health Record exists and is utilized by COUNTY OF NASSAU.

491. As a result of the willful, intentional, and flagrant disregard of the rights of the Representative Plaintiffs and members of the Class by the Defendants, individually and/or collectively, jointly and/or severally, and as a result of the failure of the Defendants, individually and/or collectively, jointly and/or severally, to recognize and respect, much less protect the civil, constitutional, and human rights of the Plaintiffs, the Representative Plaintiffs and members of the Class will incur out-of-pocket costs associated with the prosecution of this action to vindicate and protect the civil, constitutional, and human rights of the Plaintiff classes.

492. As a result of the willful, intentional, and flagrant disregard of the rights of the Representative Plaintiffs and members of the Class by the Defendants, individually and/or collectively, jointly and/or severally, and as a result of the failure of the Defendants, individually and/or collectively, jointly and/or severally, to recognize and respect, much less protect the civil, constitutional, and human rights of the Plaintiffs, the Representative Plaintiffs and members of the Plaintiff ADP Class, the Representative Plaintiffs and members of the Class will incur lost opportunity costs associated with the effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the actions of the Defendants, jointly and severally, individually and collectively.

493. As result of the procedures and practices complained of herein, Representative Plaintiffs have suffered exacerbation and aggravation of emotional and mental conditions originated from their initial apprehension and detention by Defendants.

494. As result of the procedures and practices complained of herein, Representative Plaintiffs and, upon information and belief, members of the Plaintiff ADP Class, have been caused to suffer and are required to endure anxiety, pain, and illness.

495. Plaintiffs, and all others similarly situated, suffer the loss of their electronic device/cellular phone.

496. Defendants, NASSAU COUNTY and its various sub agencies, inclusive of the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE and NASSAU COUNTY POLICE DEPARTMENT, refuse to release the electronic devices/cellular phones regularly seized from persons in the County of Nassau.

497. Defendants, NASSAU COUNTY and its various sub agencies, inclusive of the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE and NASSAU COUNTY POLICE DEPARTMENT, have no legal basis to hold the electronic devices/cellular phones regularly seized from J.S. and her mother, Linda Snyder, and all other class representatives.

498. Defendants, NASSAU COUNTY and its various sub agencies, inclusive of the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE and NASSAU COUNTY POLICE DEPARTMENT, therefore engage in conversion and violate the constitutional rights of all persons so similarly situated to J.S. and Linda Snyder.

499. Defendants, NASSAU COUNTY and its various sub agencies, inclusive of the NASSAU COUNTY DISTRICT

ATTORNEY'S OFFICE and NASSAU COUNTY POLICE DEPARTMENT, provide no procedural due process for the release of the electronic device/cellular phone so as all similarly situated persons cannot obtain the property which is rightfully theirs

500.   Defendants, NASSAU COUNTY and its various sub agencies, inclusive of the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE and NASSAU COUNTY POLICE DEPARTMENT, provide no procedural due process for the release of the electronic device/cellular phone so as all similarly situated persons on a phone plan contract must continue to pay money albeit they are denied use of their property by these Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment which will:

CERTIFY this case as two class actions, one for Plaintiff ADP Class and one for the routine conversion of electronic/cellular phones; appoint and designate the Plaintiffs as class representative; and appoint Plaintiffs' counsel to represent the class.

AWARD the Representative Plaintiffs and the individual members of the Plaintiff Class appropriate equitable relief including, but not limited to Declaratory Judgment and the traditional equitable remedies of mandamus and prohibition.

## Declarations of fact and law

DECLARING that Defendants, jointly and severally, individually and collectively, act as *parens patriae* to every 16 and 17-year old adolescent charged with a crime and as such have a non-delegable duty and obligation to protect the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old

adolescent minors charged with non-violent crimes, the members of Plaintiff Class.

DECLARING that the United States of America is the ultimate *parens patriae* of all those 16 and 17-year-old adolescent minors charged with non-violent crimes, the members of Plaintiff Class.

DECLARING that Defendants, jointly and severally, individually and collectively have created an imminent danger of serious, permanent, and irreparable damage to the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with crimes within County of Nassau, and mandated to the ADP.

DECLARING that the Defendants, jointly and severally, individually and collectively  individually and/or collectively, jointly and/or severally, are under a continuing obligation to protect, sustain and support the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with crimes without extracting personal health information or inculpatory information without informed consent, the right to counsel and other constitutional protections.

DECLARING that the Defendants, jointly and severally, individually and collectively have relied upon contractors, vendors, and/or consultants in order to cover the insufficient numbers of government staff and the inadequacy of government agency management, and the lack of effective policies and procedures in order to effectively protect the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with crimes within County of Nassau, and mandated to the Adolescent Diversion Program (ADP).

DECLARING that Defendants, jointly and severally, individually and collectively, made deliberate decisions which were arbitrary, capricious, in excess of statutory jurisdiction, authority, or limitations, short of statutory right, and without observance of procedure required by law, to the extent that such decisions and administrative determinations failed to respect and actually

121

violated the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with crimes within the Adolescent Diversion Program (ADP), County of Nassau.

DECLARING that 16 and 17-year-old minors arrested by the Nassau County Police Department are coerced into entering the Nassau County Adolescent Diversion Program (ADP).

DECLARING that law enforcement officers in Nassau County routinely seize cell phones and smart phones without a warrant or under exigent circumstances at the time of arrest.

DECLARING that law enforcement officers in Nassau County routinely refuse to return the cell phones, electronic devices and smart phones seized persons arrested by law enforcement officers in Nassau County although no circumstances exist which might justify law enforcement officials in retaining those devices.

DECLARING that law enforcement officers in Nassau County/Nassau County must arrange for the return if not some quantum of due process for the return of cell phones, electronic devices and smart phones seized persons arrested by law enforcement officers in Nassau County.

## The equitable remedy of mandamus

DIRECTING Defendants, jointly and severally, individually and collectively to take all necessary action to protect the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with crimes within the Adolescent Diversion Program (ADP), County of Nassau.

DIRECTING the Defendants, jointly and severally, individually and collectively to fully implement their declared mission statement to the extent required to protect the Constitutional, civil, human, and natural rights of all those 16 and 17-year-old adolescent minors charged with non-violent crimes.

**The equitable remedy of prohibition**

PROHIBITING the Defendants, jointly and severally, individually and collectively publishing and distributing misinformation, disinformation, and propaganda concerning the operation and effects upon Society of their implementation of the Nassau County Adolescent Diversion Program (ADP).

PROHIBITING the Defendants, jointly and severally, individually and collectively from utilizing data gained from Nassau County Adolescent Diversion Program (ADP) obtained without HIPPA compliance.

PROHIBITING the Defendants, jointly and severally, individually and collectively from utilizing data gained from Nassau County Adolescent Diversion Program (ADP) obtained without informed consent to be utilized by the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE.

PROHIBITING the Defendants, jointly and severally, individually and collectively from utilizing data gained from the unlawful seizure of electronic, cellular phone and/or smart phone devices without a warrant.

PROHIBITING the Defendants, jointly and severally, individually and collectively from seizing cellular phone, electronic and/or smart phone devices without a warrant.

ORDERING the Defendants, jointly and severally, individually and collectively to return seized cellular phone, electronic and/or smart phone devices to their rightful owners after the disposition of the underlying criminal case.

ORDERING the Defendants, jointly and severally, individually and collectively to create a procedural mechanism for the return of such seized cellular phone, electronic and/or smart phone devices to their rightful owners.

PROVIDING such other and further equitable relief as may be appropriate under the circumstances;

AWARDING just compensation to the Plaintiffs as appropriate general and compensatory damages in an amount to be determined at trial;

AWARDING appropriate punitive damages to the individually named Defendants, inclusive of County of Nassau, for the constitutional, class and individual violations above;

AWARDING pursuant to 42 U.S.C. § 1988, fair and reasonable attorneys' fees together with the costs and disbursements and reimbursement of all the expenses incurred by the Plaintiffs and their attorneys in the prosecution of this action of this action;

All together with such other and further relief as to this Court shall deem just and proper under the circumstances.


DATED   Melville, New York
AT      September 10, 2019

CORY H. MORRIS (CM 5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for the Plaintiffs*
Office & P.O. Address
135 Pinelawn Road, Suite 250s
Melville, New York 11747
Phone: (631) 450–2515
FAX: (631) 223–7377
email Cory.H.Morris@protonmail.com
VICTOR JOHN YANNACONE, JR. (VY6405)
*of counsel*
Phone: (631) 475–0231
Email barrister@yannalaw.com

124

## INDEPENDENT VERIFICATION

State of New York
County of Suffolk } ss:

    Linda Snyder duly affirming under the penalty of perjury deposes and says that I am the one of the Plaintiffs filing this Verified Complaint and accompanying documents; that I have read the foregoing Verified Complaint and know the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief.

Duly affirmed under penalty of
perjury on September 9 , 2019

 

_____
LINDA SNYDER

Sworn before me on the
9ᵀᴴ of September  , 2019

_____

NOTARY PUBLIC
Notary Public, State of New York
No. 02GR1584175
Qualified in Nassau County
Commission Expires 9/30/202_