**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

JORDAN SNYDER and LINDA SNYDER,

              Plaintiffs,

      -against-

COUNTY OF NASSAU, MADELINE SINGAS as Nassau County District Attorney; PATRICK J. RYDER, as Commissioner of Police, Nassau County Police Department; the NASSAU COUNTY POLICE DEPARTMENT; Nassau County Police Detective DAMIEN SUAREZ #8794, Nassau County Police Detective BRENDAN C. GIBBS (#8774) individually and in their official capacity; NASSAU COUNTY POLICE OFFICERS JOHN AND JANE DOE#1-10, individually and in their official capacity; VILLAGE OF HEMPSTEAD and HEMPSTEAD POLICE OFFICER IAN ROTH NO. 1252, individually and in his official capacity; HEMPSTEAD POLICE OFFICERS JOHN AND JANE DOE #1-10, individually and in their official capacity as officers of the Village of Hempstead Police Department, and VILLAGE OF HEMPSTEAD POLICE DEPARTMENT; JOHN PLACKIS, as Director of Probation, and NASSAU COUNTY DEPARTMENT OF PROBATION; and BRANDON CHAMBERS,

              Defendants.

**MEMORANDUM OF DECISION & ORDER**

19-CV-5165(GRB)(AKT)

-------------------------------------------------------------------X

**GARY R. BROWN, United States District Judge**:

Appearances:

Cory H. Morris, Esq.
Law Offices of Cory H. Morris
*Attorneys for Plaintiffs*
135 Pinelawn Road, Suite 250S
Melville, New York 11747

1

Victor John Yannacone, Jr.
Yannacone & Yannocone PC
*Attorneys for Plaintiffs*
PO Box 109
Patchogue, NY 11772

Jared A. Kasschau, Esq.
Nassau County Attorney
By: Pablo A. Fernandez, Esq., Deputy County Attorney
*Attorneys for County Defendants*
One West Street
Mineola, New York 11501

William J. Garry, Esq.
Harris Beach PLLC
*Attorneys for Village Defendants*
333 Earle Ovington Boulevard
Uniondale, New York 11553

    In this overly litigated civil rights action, long on allegations and rhetoric but short on actionable facts, the plaintiffs lodge grievances arising from the arrest of the plaintiff Jordan Snyder based upon charges of telephonic death threats filed by defendant Brandon Chambers, a former boyfriend of that plaintiff. Before the Court are summary judgment motions by two sets of defendants: (1) Nassau County, Madeline Singas, Patrick J. Ryder, the Nassau County Police Department, Damien Suarez, Brendan C. Gibbs, John Plackis and Nassau County Department of Probation (collectively the "County Defendants") and (2) the Village of Hempstead and Hempstead Village Police Officer Ian Roth (together the "Village Defendants"). Because the undisputed facts overwhelmingly demonstrate that most of the causes of action against these defendants are entirely meritless, the motions are granted in substantial part. Indeed, the only claim not so resolved – an alleged warrantless search of Plaintiffs' home by Defendants Suarez and Gibbs – is dismissed for failure to comply with Fed. R. Civ. P. 8. As set forth below, despite repeated failures to file a proper complaint, Plaintiffs are granted leave to amend the complaint as

to this cause of action.

**Procedural History**

The gratuitously complex procedural history of this matter began with the filing of a 136-page complaint, which encompassed legally spurious claims, misguided aspirations of class certification and a passel of defendants whose wanton inclusion in this case defies reasoned explanation.[1]  *See generally* Docket Entry ("DE") 1.  Judge Seybert, to whom this action was assigned at that time, noted that, at 131 pages plus hundreds of pages of exhibits, the complaint was of "excessive length," and ordered that Plaintiffs' counsel file an amended complaint "that complied with Rule 8's mandate of 'a short and plain statement of the claim[s] showing that the [Plaintiffs are] entitled to relief' and that '[e]ach allegation [] be simple, concise, and direct.'"  Electronic Order dated September 16, 2019.  Counsel filed an amended complaint which, at 36 pages, has the attribute of being *shorter*, but cannot be fairly characterized as short, plain, simple, concise or direct, as required by Rule 8 and the Court's order.  DE 35.  Worse yet, to supplement the amended complaint, Plaintiffs' counsel filed a proposed Order to Show Cause, Memorandum of Law, and Exhibits – which brought the aggregate filing to 345 pages.  Electronic Order dated September 16, 2019.  Finding this filing in flagrant violation of her individual practice rules, Judge Seybert again directed Plaintiffs' counsel to withdraw, amend and refile the papers to comport with applicable law and rules.  *Id.*  Counsel then made yet another attempt.

The resulting proposed Order to Show Cause – to the extent it can be deciphered – represented an astonishing attempt to end run numerous aspects of the Federal Rules of Civil Procedure and applicable statutory and case law by demanding that the Court immediately

---

[1] Included in this group were, inexplicably, the Attorney in Chief of the Nassau County Legal Aid Society, the Chief Judge of the New York State Court of Appeals; the District Administrative Judge for the County of Nassau on behalf of the Unified Court System for the 10th Judicial District; and the Center for Court Innovation Fund for the City of New York along with its CEO.

3

(1) certify a class action of all individuals whose phones had been seized by the Nassau County police; (2) declare a broad swath of policies involving cell phone seizure and retention, juvenile arrest and prosecution, and state diversion programs as unlawful; (3) order an array of relief, including the immediate return of all cell phones and electronic devices held in police custody, 60-day replevin hearings and the immediate destruction of all psychological records relating to juvenile offenders, and (4) award attorney's fees for this action. DE 7. In opposing an extension of time for the County Defendants to respond to this unusual application, Plaintiffs' counsel provided some insight into the nature of the action, noting "the issue at the heart of the action - the improper collection, management, distribution and disposition of psychological test records obtained from accused but not convicted minor children must be addressed as soon as possible." DE 23.

In a court appearance on January 29, 2020, Judge Seybert dismissed all class action claims on consent, as well as claims against a number of defendants. Electronic Order dated January 29, 2020. This order presumably mooted the proposed order to show cause. Soon thereafter, this matter was transferred to the undersigned.

Plaintiffs' counsel soon moved for an award of attorney's fees as to certain dismissed defendants, claiming that Nassau County had dissolved the adolescent diversion program in response to this lawsuit, while, in fact, counsel for certain state defendants persuasively reported that that development arose from legislative enactments that pre-dated this litigation. DE 56-57. The Court denied the motion for failure to comply with appropriate procedures. Electronic Order dated February 12, 2020. That same day, Plaintiffs' counsel attempted to resurrect this argument, arguing that Plaintiffs intended to move the Court for "an Order declaring Plaintiffs are the prevailing party with respect to the Class Action elements of this action," based principally on the

4

assertion that the County had returned Plaintiff Snyder's telephone "together with other cellular telephones," along with renewed claims concerning the adolescent diversion program. DE 59. That motion, too, was denied without prejudice by the Court. Electronic Order dated February 20, 2020. At the same conference, the Court converted the proposed dispositive motions by defendants to summary judgment motions. *Id.*[2] Consistent with this directive, the County Defendants and Village Defendants made the instant motions for summary judgment.

Plaintiffs' counsel responded in a flurry of massive, disorganized filings. This response bears some comment, as the filings by Plaintiffs' counsel have proven far below expectations, unnecessarily increased the costs and time required by Defendants' counsel and the Court to resolve these matters and, at times, represented a violation of Court rules and orders. For example, in an effort to rein in this burgeoning docket and allow for reasoned review, the Court denied a motion by plaintiffs' counsel to file an oversized memorandum,[3] limiting argument to 25 pages. *See* Electronic Order dated August 14, 2020. Specifically, the Court ruled:

> Plaintiff is directed to file one consolidated brief of no more than 25 pages responding to both defendants' motions for summary judgment.

*Id.* Notwithstanding this unambiguous directive, counsel for Plaintiff filed a memorandum of 53 pages in length, wantonly disobeying the Court's order. DE 93. Worse still, this memorandum was filed as part of a disorganized, 711-page submission, riddled with non-sequiturs and irrelevancy, which was unceremoniously dumped on the Court in a single, unsearchable .pdf file.[4] *Id.* Due to the substandard nature of filings by Plaintiffs' counsel, review of this motion was

---

[2] In May 2020, Plaintiffs sought and obtained a Clerk's Entry of Default against Defendant Brandon Chambers. DE 75-6. No effort has been made to perfect a default judgment.

[3] Notably, as stated *supra*, Plaintiffs' counsel had previously been admonished by Judge Seybert for filing a 53-page, single-spaced memorandum of law without court approval. *See* Electronic Order dated September 16, 2019.

[4] Court rules require that documents be filed on ECF be filed in word-searchable format. *See* NextGen CM/ECF User's Guide, available at https://img.nyed.uscourts.gov/files/local_rules/ecf-usermanual.pdf. This particular transgression may not be wholly attributable to Plaintiffs' counsel, as the record reflects that counsel for the Village Defendants made this filing under the bundling rule.

rendered unnecessarily arduous and inefficient.

This opinion follows.

**Facts**

Drawing a coherent statement of facts out of the many thousands of pages filed in this case proves something of a challenge. Fortunately, once located,[5] the 56.1 statements prove helpful in this regard.

    *i.    Factual Assertions by the County Defendants*

In their 56.1 statement, the County Defendants provide factual assertions which, based upon a search of the record, are supported by sworn statements, testimony and documents. On January 28, 2019, Hempstead Village Police Officer Ian Roth received a complaint from defendant Brandon Chambers, as follows:

> On the 28 day of January 2018 at about 5:11 PM I was at my residence []. I got a phone call from an unknown number saying "I'm going to shoot and kill you." The voice was of my ex-girlfriend, Jordan Snyder (XX-XX-XX) and her new boyfriend, who I don't know. She called me another seven times, from a blocked number, saying the same thing to also include killing my family and throwing them in the river. She also mentions they live in Island Park, NY where they do live. The calls ended around 10:30 p.m. on 1/28/2019. I had seen a handgun in her residence [ ] and feel she may use it. I feel my life is in danger never gave her permission or authority to call me and harass me. I request an arrest for what she did. This statement was written by PO Roth and is true and accurate.

DE 97 at ¶¶ 15-16. The record reveals that, at some point, Mr. Chambers executed this complaint under oath. Based on this complaint, Plaintiff Jordan Snyder was located by two detectives at her residence at approximately 2 a.m. on January 29. *Id.* at ¶ 18. Linda Snyder, Plaintiff Jordan Snyder's mother, admitted the detectives into the apartment she shared with her daughter, and the detectives were provided with Jordan Snyder's phone. *Id.* at ¶¶ 19-20. Voluntary inspection of

---

[5] Plaintiffs' responsive 56.1 statement regarding the Village defendants can be found beginning on page 659 of the 711-page summary judgment response. DE 93.

6

that phone, conducted with the permission of the plaintiffs, demonstrated that Jordan Snyder had called Chambers, a fact confirmed by AT&T records. *Id.* at ¶¶ 21-22. Although not reflected in the 56.1 statement, the record reflects that the police retained her phone as evidence for some period of time, before being returned after the filing of the instant action. The detectives took Jordan Snyder, who was then 17 years of age, into custody. *Id.* at ¶¶ 23-24.

That same day, while represented by an attorney from the Legal Aid Society of Nassau County, she was arraigned and consented to participation in the County's Adolescent Diversion Program ("NCADP"). *Id.* at ¶¶ 26-27. NCADP was a voluntary diversion program, an alternative to traditional criminal prosecution, from which participants could opt out at any stage but would then be subject to prosecution. *Id.* at ¶ 28. Her participation in that program involved, as one would expect, execution of various releases and forms and assessment by probation officers. *Id.* at ¶¶ 28-32. Jordan Snyder, for whom Mr. Morris (presently Plaintiffs' counsel in this matter) was substituted for the Legal Aid Society on or about February 20, 2019, apparently successfully completed the program, leading to a dismissal of all charges on May 22, 2019. *Id.* at ¶¶ 33-34.

   *ii.*  *Factual Assertions by the Village Defendants*

The Village Defendants assert far fewer facts because, it appears, the involvement of defendant Officer Roth, the only Village employee mentioned in this matter, was extremely limited. At 9:48 pm, Officer Roth received the aforementioned complaint from defendant Brandon Chambers, describing Jordan Snyder's alleged threatening phone calls, which, Chambers reported, made him fear for his safety. DE 92 at ¶¶ 2-4. Roth completed the appropriate paperwork, including the complaint, which Chambers signed under oath that same night. *Id.* at ¶¶ 5-10. Based on the complaint, Chambers requested Jordan Snyder's arrest, which was effected by the Nassau County Police Department. *Id.* at ¶¶ 4, 11-16. Officer Roth did not effect or process the arrest,

7

nor did he have any physical, virtual, verbal or electronic contact with the Plaintiffs. *Id.* at ¶¶ 17-25. Additionally, Officer Roth had no involvement with or participation in the NCADP. *Id.* at ¶¶ 26-27.

Although Roth had no knowledge of the same, the fact that Chambers had a criminal record and, in the past, allegedly had an inappropriate relationship with Jordan Snyder (discussed further below), would not have prevented the processing of Chamber's complaint in the manner in which it was handled. *Id.* at ¶¶ 28-30. To date, Plaintiffs have not filed any criminal charges relating to that alleged inappropriate relationship. *Id.* at ¶ 31.

iii.   *Attempts at Refutation and Counterstatements by Plaintiffs*

Many of the factual assertions raised by Defendants on these motions have gone undisputed or have been ineffectively disputed by Plaintiff, granting the Court the discretion to deem those facts admitted. As this Court has previously held:

> To oppose a motion for summary judgment, a party is required by the Court's Local Rules to submit a Statement of Material Facts upon which it contends there "exists a genuine issue to be tried" and as to "each statement controverting any statement of material fact ... must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." L. Civ. R. 56(d). A party may not rest on a mere denial without citing supporting admissible evidence. "Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion."

*Alterseekers, Inc. v. BrandForce SF, LLC*, No. CV 12-5392 (GRB), 2016 WL 8254789, at *5 (E.D.N.Y. Aug. 23, 2016) (collecting cases). This principle applies where, as here, plaintiff has failed to controvert a properly supported factual assertion "either by failing to cite evidence or interposing an improper objection." *Radice v. Eastport S. Manor Cent. Sch. Dist.*, 437 F. Supp. 3d

8

198, 208 (E.D.N.Y. 2020).

On this score, Plaintiffs' filings prove defective in several respects.  For example, in its 56.1 statement responding to the Village Defendants, Plaintiffs' counsel includes the following nonsensical, precatory language:

> The facts stated hereafter in Plaintiffs' Counter Statement are not all-inclusive of each and every disputed issue, but are provided to demonstrate the level and complexity of the disputed issues which do exist in this case.  References provided in support of each of the issues raised are not all-inclusive, and are offered to comply with the Local Rule.

DE 93 at 660.  Plaintiffs' Rule 56.1 statement fails even to present "correspondingly numbered" paragraphs, further impeding review.  In many instances, Plaintiffs attempt to rebut certain factual assertions with the blanket assertion that "Defendants provide no sworn facts or testimony to bolster this statement," when this is plainly untrue.  *Compare*, *e.g.*, DE 93 at 664, ¶ 21 with DE 92 at ¶ 2 (stating that Officer Roth received a complaint from Brandon Chambers) and DE 89 at ¶¶ 2-3 (Officer Roth's sworn declaration providing precisely this information).[6]  And some of Plaintiffs' responses are simply incomprehensible, such as their response to supported factual assertions concerning the legal status of agencies erroneously named as defendants herein.  *See* DE 93 at 662, ¶ 11 ("Plaintiffs aver that the above cases are the best evidence of the legal principles espoused by the same.").

Substantively, Plaintiffs attempt to controvert well-documented factual assertions using affidavits crafted for the purposes of this motion.  One example is the assertion by the County Defendants that Plaintiffs Linda and Jordan Snyder afforded detectives access to Jordan's phone on the night of the arrest.  *See* DE 97 at ¶ 20.  In asserting this fact, the County defendants rely upon Linda Snyder's own testimony, provided during a 50(h) hearing, demonstrating that she

---

[6] It is difficult to consider these repeated claims of an absence of evidentiary support as anything other than misrepresentations.

9

insisted that they search her daughter's phone, as well as recorded statements by Jordan Snyder apparently confirming these events. *See* DE 98-6 at 5; DE 97 Ex. I, J & K. In an effort to controvert these facts, Plaintiffs cite their own affidavits, created for the purposes of this motion, which implicitly contradict Linda Snyder's prior sworn testimony.[7] *See* DE 93 at 668, ¶¶ 33-34 and matters cited therein. Similar efforts to contradict other facts – including whether Jordan Snyder was adequately represented by Legal Aid at the arraignment, whether Officer Roth processed the arrest and, oddly, whether the District Attorney's Office moved to dismiss the charges against her – prove equally unavailing. *Id.* at 10-12, 16 ¶¶ 40, 43, 63. Even if a genuine dispute existed as to these matters, these facts also seem immaterial to Plaintiffs' claims against the movants.

The only potential issue of fact arises from the entry of the detectives into the plaintiffs' home on the evening of the arrest. The County Defendants contend that no Fourth Amendment violation occurred based upon the purported consent of Plaintiff Linda Snyder for the detectives to enter the home and speak with her daughter. In support of their consent theory, County Defendants offer the testimony of Linda Snyder taken in conjunction with a 50(h) hearing. In that testimony, Linda Snyder avers that the detectives were "banging at [her] door," that she "answered the door" and that the detectives indicated a desire to speak with Jordan. DE 98-6 at 2-3. When a detective advised that her daughter was suspected of making death threats, according to Linda Snyder, the following ensued:

> A: I said, "this is incorrect" and he said, "I need to speak to Jordan Snyder." And I said, "my daughter is sleeping, she has school tomorrow," and he told me to wake her up."
>
> Q: And did you go with [sic] wake your daughter up?

---

[7] The portion of Jordan Snyder's affidavit, ¶¶ 30-42, makes no explicit mention of the subject telephone.

10

> A: Absolutely.
>
> Q: What happened next?
>
> A: Him and Detective Gibbs was with him, so they came in, I got my daughter up . . .

*Id.* at 4.  According to her testimony, the detective almost immediately accused her daughter of making telephonic death threats to Chambers; she responded as follows:

> A: I said to him, "that is incorrect, my daughter did not threaten Mr. Chambers," but I told my daughter to get her phone so she went into the bedroom, got her phone and, you know, her phone was shut down so he said to her "don't be deleting anything from the phone."  And I said to him, "I'm sorry, she is turning her phone on.  We were half asleep."  So . . . she gave him the phone to look at and she showed him . . . .

*Id.* at 5.  As to whether there was consent to enter the apartment, Linda Snyder testified that the detectives did not ask to come in, but simply came in. *Id.* at 8.  At the same time she acknowledged opening the door for them, that she made no objection or complaint about their entry, and did not tell them to get out.  *Id.* at 8-9.

In her affidavit,[8] Plaintiff Linda Snyder avers that, on the night of the arrest, "[u]pon opening the door, the plain clothes detectives entered the living room without permission or explanation." DE 93 at 91, ¶ 6.  She then goes on to aver – in the most conclusory way – that the detectives "conducted a search of the Apartment."  *Id.* at 92, ¶ 19.  Other than the recovery of the cell phone – which, based on her sworn testimony, was clearly done with the consent (if not the insistence) of Linda Snyder, understandably eager to exculpate her daughter – no other details are provided concerning the nature of the purported "search."

---

[8] The affidavit, astonishingly miscaptioned as the "Affidavit of Jordan Snyder" is located on page 91 of Plaintiffs' 711-page submission.  DE 93 at 91.  That scrivener's error proves particularly confusing because of the repeated misidentification of subjects and reflexive third-party references scattered throughout the affidavit.  *See, e.g., id.* ¶ 9 (the detective "showed me a picture of her daughter, Jordan Snyder"), ¶ 14 ("Linda Snyder was in the room when Jordan Snyder was asked questions").  Both the courtesy copy supplied to chambers and the electronically filed affidavit are incomplete, as neither contains a signature page.  The Court has opted to overlook this omission, assuming that the affidavit was properly signed, a courtesy that will not be afforded again.

11

Finally, Plaintiffs' 56.1 statement asserts a panoply of counterstatements, some of which are interspersed with legal theories, and none of which create issues relevant to the case at bar.[9] Plaintiffs' counsel also makes reference therein to a desire to obtain discovery under Rule 56(d), though he fails to comply with that Rule, which requires, *inter alia*, identification of the discovery required to defend against the motion.

**DISCUSSION**

*Summary Judgment Standard*

This motion for summary judgment is decided under the oft-repeated and well-understood standard for review for these matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211-12 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. In sum, the question before the Court is whether, based upon the undisputed or improperly disputed facts, the defendants are entitled to judgment.

*Claims of False Arrest, False Imprisonment, Malicious Prosecution and Abuse of Process against the County Defendants*

Notwithstanding the sheer heft of the filings, most issues on this motion are readily resolved. The facts – largely undisputed and/or indisputable – unquestionably establish a basis for probable cause of the arrest. "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citations omitted). Indeed,

---

[9] Most of these additional facts revolve around a purported inappropriate and illegal sexual relationship between Jordan Snyder while she was a minor (though it is undisputed that she was 17 by the time of the events in question) and the defendant Brandon Chambers, who was not. Assuming for the purposes of this motion that the assertions surrounding this relationship are true, that is unfortunate and is condemned by this Court in the strongest possible terms. However, that separate occurrence has no bearing on the propriety of the actions of the law enforcement authorities involved in these motions in responding to Brandon Chambers' complaint against Jordan Snyder. Moreover, many of the assertions in the counterstatement of facts relate to the NCADP program, the allegations about which – to the extent they have not been dismissed already – have no bearing on the instant motion.

12

the allegations signed under oath by the complaining witness – which were, in some measure, corroborated by the plaintiffs at the time of Jordan Snyder's arrest – were sufficient to establish probable cause. "[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citation omitted).

This principle holds even where the criminal complaint later turns out to be untrue. *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984) ("If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded."). In this regard, Plaintiffs' allegations about questions that could have been raised about the complainant's veracity following further investigation prove unavailing.[10] "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

The existence of such probable cause, in turn, defeats nearly all of the § 1983 claims brought by Plaintiffs here: including false arrest,[11] false imprisonment,[12] malicious prosecution[13]

---

[10] In this case, assuming, as is claimed, that the complaint that initiated all of the actions was made by an individual who had otherwise victimized one of the plaintiffs, their concern is plainly understandable. Being falsely accused of a crime is no small matter. However, based on the undisputed facts, it would seem that the law enforcement officials involved in this matter acted swiftly and professionally to ensure the public safety, and then moved with admirable rapidity to minimize the impact of these unfortunate circumstances upon Plaintiffs through a prosecutorial diversion program. Such conduct should be subject to commendation, rather than condemnation.

[11] *Jaegly v. Couch*, 439 F.3d 149, 150 (2d Cir. 2006) (Sotomayor, J.) ("[A] claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime.").

[12] *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) ("[A] finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution.").

[13] *Id.*

13

and abuse of process.[14] Similarly, the existence of probable cause defeats Plaintiffs' Fourth Amendment claim as to the seizure of her cell phone, which argument is expressly predicated upon the lack of probable cause for the arrest. Plaintiffs' Brief, DE 93 at 22-29. In terms of the seizure of the device (and there is no evidence that it was searched), the law provides that "[s]eizure of everyday objects in plain view is justified where the officers have probable cause to believe that the objects contain or constitute evidence." *United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017) (upholding warrantless seizure of cell phones). Here, where the subject cell phone was the very instrument of the complained-of conduct, the seizure of the device was clearly appropriate and permissible.

Based on the foregoing, summary judgment is granted as to all claims against the County Defendants, with the sole exception of the warrantless search claim as against Detectives Suarez and Gibbs, discussed further below.

*The Warrantless Search Claim*

One could infer from the testimony of Linda Snyder at the 50(h) hearing that she consented to the entry of the detectives into the home on the night of the arrest. *See* DE 98-6 at 5. However, she never expressly testified that she consented to their admission, and the affidavit on this motion portrays this in a very different manner, including alluding to a "search" of the home. This at least raises a question – however thin – as to whether a claim based upon a warrantless search could proceed. Thus, summary judgment must be denied as this narrow issue.[15]

Even before such a claim may proceed, however, a more fundamental issue must be addressed. The County Defendants moved, in the alternative, for dismissal of the complaint for

---

[14] *Cartelli v. Cty. of Suffolk*, 2019 WL 6875376, at *6 (E.D.N.Y. Dec. 17, 2019) ("[P]robable cause constitutes a complete defense to an abuse of process claim.").
[15] For avoidance of doubt, should this matter proceed, discovery will be narrowly circumscribed.

14

violation of, among other things, Rule 8. That Rule permits, and at times requires, the dismissal of a complaint where its length and complexity obscures its function as a notice pleading. *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (discussing the Court's authority to "dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"). "When a complaint fails to comply with these requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (noting that such dismissal is generally reserved to situations in which a "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised"). Those authorities generally deal with *pro se* pleadings which are accorded wide latitude, yet the complaint in this case, prepared by counsel, appears to fit the description.

Thus, the remaining portions of the complaint, which relate solely to the purported warrantless search (and any pendent state court claim not resolved by the entry of summary judgment above) against the County Defendants are hereby dismissed under Rule 8. However, even though counsel has previously been granted leave to replead, one last opportunity will be afforded to file an amended complaint.

*Summary Judgment as to Claims against the Village Defendants*

As to the Village Defendants, based upon the undisputed facts which show nothing but ministerial acts by Officer Roth, Plaintiffs have not even posited a colorable argument for the filing of this action against the Village Defendants. The persistence of Plaintiffs' counsel in attempting to maintain this action against the Village Defendants, even when discovery has demonstrated no actionable conduct on the part of Officer Roth, borders on the vexatious. As such, the motion for

summary judgment by the Village Defendants is granted in all respects.

*Expectations of Plaintiffs' Counsel Going Forward*

This opinion documents a litany of errors, abuses and violations of Court rules and orders by Plaintiffs' counsel. Counsel for Defendants have been commendably reserved about seeking sanctions regarding this conduct, which often approached the outrageous. Plaintiffs' counsel is hereby admonished that such behavior will be tolerated no longer. Because the unfair and unnecessary burdens imposed by counsel's misdeeds on his adversaries and the Court must be avoided in the future, strict adherence to rules and procedures will be rigorously enforced. Before proceeding with the narrow claim for which leave to replead has been granted, counsel would be well advised to independently assess the *bona fides* of such claim before proceeding. If appropriate, the Court will not hesitate to invoke the authority available under 28 U.S.C. § 1927, Rule 11 and its inherent powers to remedy any future transgressions.

**CONCLUSION**

Based on the foregoing, it is hereby ORDERED as follows:

1. The motion for summary judgment by the County Defendants is hereby granted in part, specifically as to the claims of false arrest, false imprisonment, malicious prosecution, abuse of process, and any claims relating to the seizure of Plaintiff Jordan Snyder's cell phone. Summary judgment is denied regarding the claim as against the detectives arising from the alleged warrantless search of Plaintiffs' residence;

2. The motion to dismiss the claim related to warrantless search of the Plaintiffs' residence (as well as any pendent state court claim not resolved by the entry of summary judgment against the County Defendants) for failure to comply with Rule 8 is granted;

3. The motion for summary judgment by the Village Defendants is granted in its entirety;

4. Plaintiffs are granted leave file an amended complaint consistent with this opinion within 14 days of the date of the decision;

5. Plaintiffs are directed, if appropriate, to seek entry of default judgment against defendant Chambers within 14 days of this decision. Said application will provide a memorandum describing the bases for subject matter jurisdiction regarding the claims against Chambers. Failure to seek such a default judgment within 14 days will result in dismissal for failure to prosecute.

6. Plaintiffs' Counsel is advised to carefully review this opinion in its entirety, with particular attention to the admonishments contained therein.

**SO ORDERED.**

Dated: Central Islip, New York
March 31, 2021

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge